57   533
d78   631

FRANK WALTON *v.* THE STATE.

CRIMINAL LAW. *Murder. Fixing penalty. Instructions.*
    Under the act of March 4, 1875 (Acts 1875, p. 79), empowering the
    jury to declare in their verdict, convicting any person of a capital
    crime, that the punishment shall be imprisonment for life, it is not
    enough to instruct them of their power, but their verdict will be
    set aside unless they are informed that, if they do not so declare,
    the sentence will be that of death. CHALMERS, J., dissented.

ERROR to the Circuit Court of Wayne County.
Hon. J. S. HAMM, Judge.

On the trial of this indictment for murder, the counsel for
the defendant asked the court to charge that " if, after care-
fully considering all the evidence, the jury find the defend-
ant guilty as charged, beyond all reasonable doubt, they may,
in their discretion, declare in their verdict that the penalty or
punishment shall be imprisonment for life in the penitentiary.
But, if the jury should omit to so declare the penalty in their
verdict, the court shall pronounce the death penalty." The
court refused to give that instruction for the defendant, but
gave the following for the State : " If the jury, from the evi-
dence, should find the defendant guilty, and such should be
their verdict, then they may, if they think proper, declare the
penalty to be imprisonment for life in the penitentiary. But
if they, while concurring in and agreeing to a verdict of guilty,
cannot agree as to adjudging the penalty to be imprisonment
for life, then they shall return a verdict of guilty as charged
in the indictment." The verdict was: " We, the jury, find
the defendant guilty as charged in the indictment ; " and,
thereupon, the defendant moved for a new trial, upon the
ground that " the law, in its mercy, gives the jury the right,
under the statute of 1875, to find the defendant guilty, and
to recommend in their verdict that he shall be imprisoned
in the penitentiary for life, and the court erred in refusing the
charge asked by the defendant and substituting the one given
by the court." The court overruled the motion, and sentenced
the prisoner to be hanged.

*J. L. Morris*, for the plaintiff in error.

The instruction, which informed the jury of the effect of their failure to fix the punishment in the language of the statute (Acts 1875, p. 79) should have been given. But the court, adopting certain expressions in the case of *Green* v. *State*, 55 Miss. 454, charged the jury, if they could not agree on the penalty, to find a general verdict of guilty. They did not understand that by such a verdict they were inflicting the death penalty, but, as the charge informed them that the punishment was discretionary, they naturally supposed that the court, in case of their disagreement, had power to sentence to imprisonment.

*T. C. Catchings*, Attorney General, for the State.

There is nothing whatever in the objection made by the plaintiff in error. The instruction for the State fully informed the jury as to their right to commute the death penalty, and nothing more could be demanded of the court.

GEORGE, C. J., delivered the opinion of the court.

The plaintiff in error was convicted of murder and sentenced to death. He asks for the reversal of this judgment because the court refused to give an instruction to the jury informing them that, in case they failed to affix to his crime the punishment of confinement for life in the State Penitentiary, then it was the duty of the court to impose on him the penalty of death. We think the court erred in refusing the charge.

It is true that when the question submitted to a jury is alone as to the guilt or innocence of the accused, they have nothing to do with the punishment to be inflicted, in case they render a verdict of guilty. Their duty is simply to find the fact of guilt or innocence, according to the evidence before them, and a charge from the court as to the punishment to follow conviction could have no other effect than to deter them from discharging their duty. But in this case, that was not the sole question submitted to the jury. They are invested by law with the power, and charged with the duty, of determining which of two punishments shall be inflicted. It is true, the statute does not in express terms say that they shall choose between the two punishments ; but such is its necessary mean-

ing and effect, for the failure to choose one of them necessarily imposes the other. A failure expressly to choose one is a necessary though tacit choice of the alternative. The duty, or privilege, if that term is preferred, of choice between two, necessarily involves the idea of knowledge as to the alternatives about which the choice is to be exercised. Certainly the legislature did not intend that there should be a blind and unreasoning choice, but a careful, intelligent and discriminating selection. It is impossible to conceive that this could be done if the jury were ignorant of one of the two punishments between which they were to select. It was a necessary element, in determining whether the imprisonment for life should be inflicted, to know whether a milder or greater punishment might or must necessarily be inflicted, in case of their omission to affix imprisonment. The jury might have supposed that the punishment to be inflicted, in case of their failure to act, would be milder than imprisonment for life, and for that reason have failed to act; or their failure may be attributable to a belief on their part that, in that event, the punishment would be left to the discretion of the judge.

We are not authorized to assume, as an answer to this view, that the jury were well acquainted with the law condemning the prisoner to death in case they failed to impose imprisonment. It would very materially change the character and modify the functions of this court if our duty should be held to be, not to determine upon the legality of instructions asked by testing the principles stated in them by our knowledge of the rules of law, but by an inquiry, impossible of certain solution, as to how much or how little instruction the jury needed, based upon the further equally fruitless inquiry as to how much each individual juror might know. It is true that as to his business transactions and civil conduct, every man is presumed to know the law. This presumption we know, in most instances, to be false, and it is indulged in only from a necessity which mainly arises from the impossibility of determining how much or how little law any man knows. But the presumption is the contrary as to jurors, so far as it relates to principles of law applicable to the case before them, and about which the court is asked to charge them. As to these, they

are presumed to know nothing, and to derive all their knowledge from the court. If we consider, as we legally must, in determining the propriety of the charge refused by the court below, that the jury were ignorant of the law which made the infliction of the death penalty the only alternative of their omission to affix imprisonment for life, that they were called upon to decide between two punishments, one of which must necessarily be inflicted, and were kept in ignorance as to the nature and extent of one of them, the great wrong done the prisoner by the refusal of the instruction will be at once perceived. Certainly there can be no principle of law or public policy which could justify the condemnation of a man to death by a tribunal which was ignorant of the fact of condemnation when it was made.

We do not understand the view taken in the dissenting opinion to be that the instruction, if given, would have been improper, but that the judge is to be excused for the failure to give it because, on the modification of the charge, this part of it was inadvertently omitted, and that it is incredible that the jury should have been ignorant of the law omitted to be stated to them. Inadvertence, however much it may be considered as an excuse for the non-performance of a legal duty, can never be held to be equivalent to performance, or to be a substitute therefor. The wrong to the accused is just as great, whether the failure to give the charge resulted from the innocent mistake of the judge or his wilful refusal. The belief that the jury could not have been ignorant of the law thus declined to be charged to them is equally unavailing. The question to be determined by us is not as to the extent of the knowledge of the jury, as to which we have no criterion whatever for forming an opinion, but as to the propriety of giving or refusing the charge, tested by the principles of law applicable to the case. That such a belief in their knowledge would be but a poor substitute for the actual imparting of this knowledge by a proper instruction is made evident when we consider that the choice of imprisonment for life may be prevented by one juror alone, and his ignorance may be the cause of his disagreeing with his fellows. Under the present system of selecting juries in this State, it is not incredible that one member, at least, of some one jury

might be ignorant of that or any other named principle of
law. So far as we know, the fact that the jury were already
well acquainted with the law has never been held a good
answer to the objection that the court refused a legal and
proper instruction, and we do not consider this a proper case
in which to make a precedent of that kind, if we had the
power.           *Judgment reversed and cause remanded.*

CHALMERS, J., delivered the following dissenting opinion.

The jury have nothing to do with the punishment which the
law affixes to a conviction of guilt, and the accused has no
right to demand that they shall be instructed in regard to it.
The punishment which the law affixes to the crime of murder
in this State is death, and that punishment follows by oper-
ation of law upon a verdict of guilty. This punishment the
jury may, if they elect so to do, commute into imprisonment
for life. When they have been instructed by the court as to
their prerogative in this regard, they have received all the
information which the accused has a right to demand that they
shall receive. In this case the court was requested to charge
the jury that they might fix the punishment at imprison-
ment for life, if they thought fit, but that if they failed
to specify their will in this respect, the death penalty would be
inflicted. The charge failed to inform them what action they
should take if they were unanimous in deeming him guilty,
but failed to agree as to the punishment. The charge was
therefore modified by the court, so as to announce to them the
rule laid down in *Green* v. *State*, 55 Miss. 454, to the effect
that, in such event, it was their duty to return a general ver-
dict of guilty. In the modification, the statement, that if they
failed to affix the punishment of imprisonment, the law affixed
that of death, was omitted. I see no reason for its omission,
nor do I see any legal right that the accused had to demand
that it should be given. The jury were instructed that they
could punish by imprisonment if they thought proper; but
they declined to do so. I cannot think that any legal right of
the prisoner has been violated, and it is simply incredible that
the jury did not intend by their verdict that the penalty which
the law affixes to a conviction of murder should follow.