Jay Dee House v. State of Mississippi.

[48 South. 3.]

1. Criminal Law and Procedure. *Murder. Evidence. Motive.*

A conviction of murder, otherwise supported by evidence, will not be reversed by the supreme court alone because the motive for the killing was not proved.

2. Same. *Dying declaration. Predicate.*

A dying declaration, made after a physician had advised declarant that he could live only a few hours, and spoken, only two hours before his death, immediately following his statement that he believed he was going to die and would like to see his parents and his wife and that if he had to die he would die brave, is not subject to the objection that a proper predicate was not shown for its admission in evidence.

3. Same. *Same. Competency.*

A dying declaration, which is the direct result of observation through declarant's senses, is admissible; but a declaration which comes from a course of reasoning from collateral facts is inadmissible.

4. Same. *Same. Opinion. Killed without cause.*

A dying declaration that accused killed declarant without just cause is admissible as a statement of a fact, and is not objectionable as the opinion of the declarant, where the facts of the killing were known to declarant.

From the circuit court of Lee county.

Hon. Eugene O. Sykes, Judge.

House, appellant, was indicted and tried for the murder of

James Putt, convicted, sentenced to the penitentiary for life, and appealed to the supreme court.

The opinion of the court states the facts.

*Guy Mitchell,* for appellant.

The fifth assignment of errors presents the question of the competency of the dying declaration of decedent. The declaration is manifestly the expression of an opinion and not one of fact, and therefore was improperly admitted. The defendant objected to the declaration made in these words: "He shot me without cause;" then to make the objection more specific and to meet the requirements of the court as announced in the *Lipscomb case,* 75 Miss. 777, 21 South. 657, as to objections being too general, defendant objected to the words "without cause" in such alleged declaration, because it was the expression of an opinion and not of a fact. There can be no point made in this case at bar that the objection is too general. In considering whether this statement was one of opinion or one of fact, the court must take into consideration the surroundings and relevant circumstances of declarant when the statement was made, and these things will materially aid in determining whether the statement is one of fact or not. The surroundings and circumstances as detailed in the evidence, negative the idea that this declaration is a statement of a fact. If the decedent were living and placed on the stand, he would not be permitted to testify that defendant shot him "without cause." The only thing he would be permitted to state with reference to it, would have been that he was making no hostile demonstration toward accused when the shot was fired. The cause for the shooting is clearly a question for the jury, and not one that can be answered by the decedent when under the shadow of death, when his mind must to some extent have been impaired; a time when inferences and opinions may appear to be facts, when the passions of anger and revenge are lingering to cloud the mind. The result of this practice would be to try a man out of court and without giving him a hearing.

In the *Payne case,* 61 Miss. 161, this court held that the state-

ment: "Shot me without cause" was one of fact. The court gave no reason for its conclusion, and only one authority was cited to sustain the position, and that was *Wroe v. State,* 20 Ohio St. 460, which upon careful examination, shows that the court was hardly justifiable in reaching that conclusion. The next case to announce this doctrine was *Boyle v. State,* 105 Ind. 469, 97 Ind. 322, and the court was divided on the proposition; the dissenting opinion being the much clearer and showing the fallacy of the court's reasoning. As we stated, our court relied upon the *Wroe case* above cited, and we find that case is based on a decision of the Kentucky supreme court, *Handy v. Commonwealth,* 5 Crim. L. Mag. (Ky.) 47. That case cites *Rex v. Scaife,* L. M & R. 551, where the statement before the court was: "I don't think he would have struck me if I had not provoked him;" and the court admitted this upon the sole ground that it was in favor of the prisoner. The case of *Handy v. Commonwealth,* was also one in which the dying declaration was in favor of accused, and not against him. In this case it is said: "The general rule that declarations of deceased are admissible only when they relate to facts, and not to opinions, is subject to the exception that declarations of mere opinions of deceased, are admissible when favorable to the accused, and explained the conduct of the deceased." Thus we see that our court has followed the *Handy case* when it was based altogether on another rule of law. As proof of this assertion, we find that the supreme court of Kentucky in a later case than *Handy v. Commonwealth,* condemns the cases above cited, and shows wherein they are not analogous to the *Handy case.* See *Collins v. Commonwealth,* 12 Bush (Ky.) 271; in which the declaration was: "Michael Collins killed me and killed me for nothing." As to such a declaration the Kentucky supreme court says: "The statement that Collins killed the deceased for nothing," was but an expression of an opinion and was clearly inadmissible.

After careful examination of all the cases that even tend to hold that declarations of this character are admissible, it must

appear that there is either a defective reason, or no reason at all, given for the decision. We call attention to two of these cases which attempt to give their reasons. In *Sullivan v. State,* 102 Ala. 142, it is put on the ground that the statement was of a collective fact. In *Boyle v. State,* 105 Ind. 469, the Indiana court says that: "He cut me without reason" is an inference of facts from observed facts, which of itself shows the error of the decision, as the statement of the court is a good definition of an opinion." There is a decisive test to which dying declarations must be subjected, and that is whatever may be stated by a witness under oath, is admissible in evidence as dying declarations made by him under the consciousness of approaching death: 10 Am. & Eng. Ency. of Law (2d ed.), 376, 377; *Whitley v. State,* 38 Ga. 50; *State v. Footyou,* 33 Pac. 537; *Lipscomb v. State,* 75 Miss. 559, 23 South. 210, 230. See also note of *Worthington v. State,* 56 L. R. A. 353; *Sweet v. State,* 107 Ga. 712, 33 S. E. 422, where the court says that a declaration of this character is one of opinion based on facts, or what he supposed were facts within his knowledge.

The dying declaration, admitted in evidence in this case, influenced the verdict to a great extent, as the other testimony for the state was in hopeless conflict with defendant's.

It is the duty of the district attorney to confine himself to the testimony in his argument to the jury, and we submit that the language used by the district attorney in his closing argument in this case, as shown by pages 173 to 175 of the transcript, should not have been permitted over defendant's objections, which were made at the proper time.

*Anderson & Long,* on the same side.

The state was permitted, over appellant's objection to introduce evidence, on the trial, as to the alleged dying declaration of the deceased to the effect that appellant shot him "without cause." While this ruling of the court below seems to be sustained by the case of *Payne v. State,* 61 Miss. 161, yet, in our

view, the case cited should be overruled. "Without cause" means of course without legal cause. If the declarant did not have sufficient learning to know the law of self-defense, such a declaration would be entitled to no force whatever. To illustrate: It is the law that one is entitled to take the life of another, if necessary in order to prevent that other from committing a felony. How many laymen know this is the law? If, under such circumstances, a person were shot down, we venture the assertion that if he were asked by a by-stander, coming up after the shooting, why he was shot, he would say he was shot "without cause." Again, take a case where two persons have had an altercation, in which charges and counter-charges are made, by one against the other, of wrong doing, the matter winding up by one telling the other, "to prepare himself, and they would shoot it out the next time they met;" and afterwards, the one making the threat cools off and concludes he is in the wrong, and makes up his mind that the next time he meets his adversary, he will apologize to him and shake hands; and later they meet unexpectedly at a street corner, having seen in close proximity before they saw each other, and the party making the threat, with a view of carrying out his friendly purpose, makes a move to draw his right hand from his pocket, to shake hands and apologize, and the other not knowing his purpose, shoots him down. Clearly under the law, the party doing the shooting under these circumstances, is without guilt. What would the wounded man say in his dying moments, were he asked about the shooting? Our idea is he would say, what almost anyone would say under the same circumstances, that he was shot "without cause." Many other illustrations of the unsoundness of the principle announced in the *Payne case, supra,* might be made. We do not see how any court ever could have held that the language in question was a statement of fact.

We contend that *Powers' v. State,* 74 Miss. 777, 2 South. 627; *Kendrick v. State,* 55 Miss. 436; *Jones v. State,* 30

South. 759; and *Lipscomb v. State,* 75 Miss. 559, 28 South. 210, 230, are not authorities against us. In the *Powers case,* the dying declaration was, "You have killed me without cause." The court held that it was properly admitted as a dying declaration, as well as a statement made to the accused and not denied by him. In the *Kendrick case,* the dying declaration was, "You have murdered me without cause or occasion, and it was damn cowardly of you," addressed by the wounded man to the defendant, to which the latter made no reply. The court held the declaration admissible in evidence, as a charge not denied by the defendant. In the *Jones case,* "it appeared that the deceased, while sitting in a room at night, with her back to the window, was shot by someone on the outside, and died shortly thereafter. She made the dying declaration, that she thought 'the accused shot her; that he told her he would, if he saw any man talking to her that night.' " The court held this statement inadmissible, as not a fact, but an opinion.

There is a full discussion of this question in the chapter on Dying Declarations, 10 Am. & Eng. Ency. of Law (2d ed.), beginning at page 360, an in *Harper v. State* (Miss.), 56 L. R. A. 372, note.

The same rules that would govern in determining the competency of the declarant, as a witness if he were living, and the competency and relevancy of his statements if he were sworn as a witness, must be applied to determine the admissibility of his dying declaration. 10 Am. & Eng. Ency. of Law (2d ed.), 375.

In a case of shooting with intent to kill, would the wounded man on the witness stand be permitted to testify, that the defendant shot him "without cause?" Certainly not. The witness might honestly believe, in his ignorance of law, that it was done "without cause" when in fact it was done in self-defense.

In view of the fact that the defendant is not confronted by the witness, and has not the opportunity of cross-examination, dying declarations against his interests ought to be admitted with great

strictness, as to relevancy and competency  They are hearsay, and in many respects are intrinsically weaker than other testimony.  *Lambeth's case,* 23 Miss. 322.

In the *Lipscomb case, supra,* Judges WHITFIELD and THOMPSON, held this language admissible in evidence, "he said that Dr. Lipscomb had poisoned him with a capsule, he gave him that night," while Judge MAGRUDER held the whole of the statement was merely an expression of opinion, and not a statement of fact. We contend that this case is not an authority against us.  The testimony in the *Lipscomb case* showed that as soon as the deceased took the capsule, he was taken violently sick and begun to vomit.  The deceased knew as a matter of fact, that Dr. Lipscomb had prepared the capsule for him, and knew what its contents was.  He knew that it was the cause of his violent sickness. His statement that "Dr. Lipscomb poisoned him" was only another way of stating, that he gave him the capsule.  His statement would have been just as damaging against the defendant Lipscomb, if he had left out that part in reference to the poisoning.  The statement of the deceased in the *Lipscomb case, supra,* involved no question of law, as it does in the instant case.  As to who gave the deceased the capsule, and its contents, and its effects, were purely questions of facts, and inferences of fact drawn from facts, at most, while in the instant case, "he shot me without cause" is really an application of law to the facts, because it necessarily carries with it the understanding of the law of self-defense by the decedent, about which he may have been mistaken.

The judgment ought to be reversed because of the argument of the district attorney, which was objected to by appellant.  The appellant objected several times to this harangue of the district attorney, but the court below overruled such objections, and permitted the district attorney to continue as before.  In that part of his speech objected to, the district attorney was permitted to tell the jury, in substance as follows: "That in counties where juries failed to do their duty, such counties ran red with human

blood;" "that in counties where they did their duty, such counties blossomed like the rose; that the instructions given by the court was a book of instructions; a great mass of instructions; a volume of instructions;" that defendant's attorneys would "read and read and read these instructions, until in the name of common sense, you will think they are never going to quit;" "that he was reminded by these instructions of a little story of the spider and the fly." "This (meaning the instructions), gentlemen of the jury, is a web of the spider, in which you might become entangled." This court has reversed many cases on account of arguments made by district attorneys, very much less prejudicial and unjust, than the one in this case. We refer the court to the following authorities, where questions more or less prejudicial and unjust, than the one in this case. We refer the court to the following authorities, where questions more or less like the one here, were involved: *White v. State,* 87 Miss. 564, 40 South. 324; *Long v. State,* 81 Miss. 448, 33 South. 224; *Sykes v. State,* 89 Miss. 766, 42 South. 875; *Middleton v. State,* 31 South. 809; *Fuller v. State,* 85 Miss. 206, 37 South. 749; *Hampton v. State,* 40 South. 545; *Bryant v. State,* 33 South. 225; *Lee v. State,* 75 Miss. 625, 23 South. 628.

*Alexander & Alexander,* on the same side.

There was no motive shown for the killing. Appellant and deceased were close friends and associates. There had been no quarrel or estrangement. The witnesses, who were taken from among their companions, concur as to this. Certainly, up to the time the game began, there had not even been an unpleasant word between them. Equally true is it that nothing happened during the game that could possibly furnish a motive for assassination; for such the crime was if there was any crime. Not even a dispute of any kind arose during the game. There was no claim that any one was cheating or being cheated. It is not even shown that appellant lost any money, especially to deceased. The learned attorney general in his brief plants himself on the

theory that Dee and Porter House planned to assassinate Jim
Putt and Hunter Moore because these two had won in the game
while appellant had lost. In order then to convict, the court
must believe that both the appellant, Dee House, and his brother
Porter House formed the deliberate purpose to foully assassinate
their companions. Not only this, but this court must believe that
both of them were such incarnate fiends that they conspired to
assassinate their friend for no other reason than that Dee House
lost to some one in the game or to all of them together a few pal-
try dollars. We are not unaware of the fact that convictions may
be sustained in some cases where the state is wholly unable to
prove a motive, but where the proof negatives the existence of a
motive and all the other facts and circumstances show improba-
bility of guilt, the absence of a motive is a very pregnant circum-
stance. We contend that none is shown in this case and that
none can be implied or presumed under the proven facts. Even
during the game, it appears that far from being at variance ap-
pellant was favored by Putt with a loan.

Not only was no motive shown, but not a word was spoken by
appellant to indicate anger. His conduct was open, and his
movements wholly inconsistent with any purpose to assassinate.
His gun was not hidden, but leaning against the house where
every one passing in and out, as they frequently did, might have
seen it. Porter House had no gun until after the killing, when
he got one from the rack at a neighbor's house. The contention,
if advanced, that some provocation arose that caused the appel-
lant, Dee House to go home for his gun in order to kill Putt is
not sustained by any evidence, and is wholly untenable. After
returning he played in the game as pleasantly as before. While
all the young men were drinking, it is not shown that appellant
was a violent man, whatever other faults he may have had. It
is wildly improbable that House if he had intended or expected
to assassinate Putt would have done so immediately before the
house in the presence almost of two of Putt's relatives, when de-
ception would have been impossible and detection sure. If it be

said that appellant was drinking, and therefore the probability
is that he shot Putt, we answer that Putt was drinking more
and there was greater probability that Putt was the aggressor in
the difficulty outside of the house. Putt is shown to have been
a violent, dangerous man. He was armed and so reckless with
his pistol, that he had, without reason or provocation, shot it off
during the game just to be shooting.

It was not shown that the so-called dying declarations were
made under a fixed belief of impending death. It is claimed by
the state that this point was not sufficiently reserved. It is the
duty of the court always to pass upon the sufficiency of the proof
to show admissibility of a dying declaration. When the physi-
cian was asked what the deceased said to him about the killing,
objection to this was made by the appellant. We think the ob-
jection was sufficiently reserved. When the physician was first
asked, whether the deceased made a statement, and whether at
the time he made it he knew he was going to die, he in answer
thereto was proceeding to give the statement in evidence when
counsel for appellant objected and told him to delay a moment.
The court below then heard the statement, and the district attor-
ney again asked what he said about the killing? Again there
was an objection by appellant. The motion for a new trial as-
signs as its seventh ground that the court erred in admitting the
dying declaration of deceased over appellant's objection. This
sufficiently presents the objection for consideration by this court.
What was the declaration when admitted? It was as twice re-
peated that "if he had to die he would die brave." It is true the
witness affirmed that Putt stated that he wanted to see his father
and mother; that he was going to die, but this was not all he said,
nor all of the sentence. The sentence was a sfollows that "he was
going to die and he believed he was and he wanted to see his
mother and father and would like to see his wife, he would like
to talk to her before he died, he also said, if he had to die he
would die brave; that was another statement he made, I believe
I never stated that before, but it is a fact, that if he was going to

die he would die brave and wouldn't die a coward." Nothing is better settled in the law of evidence than that dying declarations are inadmissible if made when there was any hope, however slight, of recovery, or any doubt, even the least, that the declarant was about to die. The cases in our court illustrating the admissibility of dying declarations are numerous. We cite the court to *Harper v. State,* 79 Miss. 575, 31 South. 195; *Brown v. State,* 78 Miss. 637, 29 South. 519; *Joslin v. State,* 75 Miss. 838, 23 South. 515; *Bell v. State,* 72 Miss. 507, 17 South. 232; *Brown v. State,* 32 Miss. 433; *Lewis v. State,* 9 Smed. & M. 115. See also Wigmore, Ev. §§ 1440, 1447.

*George Butler,* assistant attorney-general, for appellee.

The predicate for the admission of the dying declaration of the deceased was properly laid. It was shown in evidence that the deceased was shot at about half past four o'clock of the early morning and that he died about three hours later; that when the physician reached him, deceased was almost pulseless. The physician told him that he was bound to die, that at the utmost he could survive for only a few hours. The dying boy then made the declaration implicating appellant; and shortly afterward died. The deceased understood that he was in the presence of imminent death when the dying declaration was made. No objection to the admission of the dying declaration was made in the court below. Under the circumstances there was no reversible error in its admission before the jury. *Lipscomb v. State,* 75 Miss. 559, 23 South. 210, 230.

It is contended by appellant that the phrase of the declaration, "without cause," was improperly admitted, because of the alleged reason that it was an opinion or conclusion of the declarant. The declaration was to the effect that "Dee House killed him, and had killed him without cause." This was objected to by appellant, and the objection was by the trial court overruled. Then appellant objected to that part of the statement to the effect that the killing was "without cause," and this objection was also

overruled. The general objection was of course properly over-
ruled. The statement, "Dee House had killed him," was a state-
ment of fact; in fact it is admitted by appellant that this part
of the declaration was correct. Had the specific objection been
sustained, the statement then admitted would have been that
"Dee House killed him, and killed him ——" which would have
been senseless and meaningless.

If we concede, however, that the question of admissibility of
the last clause of the declaration was sufficiently raised, still
there was no error in admitting the whole declaration. In
*Payne v. State,* 61 Miss. 161, this court held that a statement
"that the defendant shot him without cause," was a statement
of fact and not an opinion or inference of the declarant. In
*Powers v. State,* 74 Miss. 777, 21 South. 657, this court said
that "the evidence of the statement made by the deceased to the
accused, to the effect that 'you have killed me without cause,' was
properly admitted as a dying declaration, as well as being a
statement made to the accused and not denied by him." In
*Kendrick v. State,* 55 Miss. 436, it appears that the deceased
said to the defendant some few minutes after the shooting,"
"Kendrick, you have murdered me without cause or occasion,
and it was a damn cowardly act." To this Kendick made no
reply. This court said, "This was not admissible as part of
the *res gestae,* because it occurred some time after the shooting,
and was merely a narrative of the past. It was not admissible
as a dying declaration because not made under the solemnity re-
quired in such case."

In the case of *Jordan v. State,* 81 Ala. 20, it appears that a
declaration as follows, "I am not drunk, but sober. Jule shot
me and Handy cut me, and all for nothing," was held to have
been properly admissible before the jury. In the case of *Sulli-
van v. State,* 102 Ala. 135 the following declaration was held ad-
missible: "Sullivan cut me. He cut me for nothing. I never did
anything to him. May God forgive him." To the same effect is
*Fuller v. State,* 117 Ala. 36. In *People v. Farmer,* 77 Cal. 1,

the following conversation between the witness and the dying man was admitted: "What did he shoot you for?" "He shot me for nothing." Practically the same case is *People v. Abbott* (Cal.), 4 Pac. 769. See also the case of *Derby v. State*, 79 Ga. 63, where the admitted dying declaration was: "O Lord, they have murdered me for nothing in the world." In *State v. Lee*, 58 S. C. 335, the admitted declaration was "Fannie, Max has shot me. He killed me in my own house for nothing, a drunken fool."

See also the following cases to the same legal effect: *Roberts v. State*, 5 Tex. App. 141; *Pierson v. State*, 21 Tex. App. 14; *Sims v. State*, 36 Tex. Com. App. 154; *Brown v. State*; 128 Ala. 6; *White v. State*, 100 Ga. 659; *Loney v. State*, 151 Ind. 511; *State v. Gile*, 8 Wash. 12; *State v. Nettlebush*, 20 Ia. 257; *State v. Saunders*, 14 Ore. 300; *Wroe v. State*, 20 Ohia St. 460; *State v. Keesler*, 14 Utah, 142; *Boyle v. State*, 97 Ind. 322; *Boyle v. State*, 105 Ind. 470. See also 21 Cyc. 988; and monographic note to *Myers v. State*, 86 Am. St. Rep. 640; and also 2 Wigmore, Ev. §§ 1440 1447.

The remarks of the learned but energetic district attorney were not beyond the pale of legitimate argument.

Argued orally by *W. D. Anderson* and *C. H. Alexander*, for appellant and by *George Butler*, assistant attorney-general, for appellee.

POWELL,* Special Judge, delivered the opinion of the court.

This is an appeal from the circuit court of Lee county. Appellant was indicted for the murder of Jim Putt, and tried, convicted, and sentenced to the penitentiary for life. We gather from the evidence adduced that appellant and deceased, with a party of some four or five others, had gathered about dark at a

---

* Judge Fletcher, having been of counsel for the state before his appointment to the bench, recused himself in this case and Robert Powell, Esq., a member of the supreme court bar, was appointed and presided in his place.

small cotton house in an old field, and engaged in a game of craps and the consumption of several quarts of whiskey. The gaming and drinking continued until between three and four o'clock in the morning. During this time several of the party retired from the game to go to their homes for money. Appellant early in the night, getting out of money, pawned his pistol to one Hunter Moore, who was in the game, and some time about three o'clock in the morning, being again short of funds, left the house with his brother Porter, ostensibly to get more money. In a few minutes he returned with a double-barrelled shotgun, and some of the witnesses say Porter brought a gun also. The state witnesses testify that at this point Dee House, the appellant, called from just outside the door of the cotton house to Jim Putt, who was on the inside, to come out as he wanted to see him, and that when Putt, the deceased, came out and started towards him, the appellant shot him with a gun when he was making no hostile demonstration whatever. The witnesses for the defense denied all this, and claimed that the first shot was from a pistol and fired by some one unknown, other than appellant, and that before appellant fired he said, "Boys, don't come on me." There was a dispute as to the number of shots fired; the state witnesses testifying there were four shots from shotguns only, and the witnesses for the defense saying there was one pistol shot and two shotgun reports. There was also a dispute as to whether the deceased had a pistol or not; but when stripped, no weapon was found on his person, nor was any seen at the place where he fell. No one except appellant claims to have seen deceased shoot at appellant or attempt to draw any weapon upon him; but he claims that deceased did both.

When deceased was shot, all parties fled from the scene of the killing, leaving deceased, who was shot in the stomach, lying upon the ground, where he remained until the doctor came, about an hour afterwards. The deceased lingered for two or three hours, and died. Before he died the attending physician told him he could not live more than five or six hours, after which he .

made the following statement as a dying declaration: "He said he wanted to see his father and mother; that he was going to die; that he believed he was, and would like to see his wife. He would like to talk to her before he died. He also said, if he had to die, he would die brave. He said that Dee House had killed him, and killed him without cause."

There are eleven errors assigned by the appellant in his assignment of errors; but after a careful examination of the record, we find that only the first, fifth, and eleventh are worthy of serious consideration, and these are the only errors seriously urged sel for appellant.

The first error assigned is that the court erred in not sustaining defendant's motion for a new trial on the ground that the jury found contrary to the evidence. In support of this assignment it is strongly urged that no motive was shown for the killing. It is true that the record in this case does not disclose any adequate motive for the awful tragedy; but, while such disclosure may and often does give tone and color to the action of the parties, it is not absolutely necessary to show the motive in order to sustain conviction, for sometimes knowledge of the secret motive may die with the dead man, or be locked up in the breast of the slayer. While the facts in this case are much disputed, we are not prepared to say that the jury, who heard all the testimony, saw the witnesses, and knew their manner of testifying, were not fully justified in the verdict rendered.

The eleventh error assigned is that the district attorney, in his closing argument, over the objection of defendant, was permitted to comment on the numerous instructions given for the defense, and to warn the jury of the necessity of doing duty to keep the country from running red with blood. In support of this assignment a long excerpt from the speech of the district attorney is copied in the record. This court has always jealously guarded the rights of defendants against unwarranted attacks by too zealous attorneys for the state, and has frequently reversed judgments in favor of the state for that reason; but in this case,

after a most careful reading of his remarks, we are unable to say that the district attorney has transgressed the bounds of legitimate argument or gone beyond the scope of reasonable comment.

The next and last assignment which we shall notice in the fifth in the appellant's assignment of errors, to wit: "The court erred in admitting the dying declaration of deceased over defendant's objections." In support of this assignment two points are urged: First, that the proper predicate was not laid; and, second, that what was said was not the statement of a fact, but only the expression of an opinion.

First, then, as to the predicate. The deceased had been grievously wounded in the stomach and was unable to arise, though he had dragged himself a few feet from the spot where he first fell. The attending physician had told him, but a short time before the declaration, that he had but five or six hours to live, and in fact he died within two hours. The declaration was as before stated: "He wanted to see his father and mother; that he was going to die; that he believed he was, and would like to see his wife before he died; that, if I have to die, I want to die brave. He said that Dee House had killed him, and killed him without cause." It is ably urged by counsel for appellant that the use of the words "if I have to die" by deceased raises a reasonable doubt of his entire conviction of impending dissolution. Taking into consideration all that deceased said, and the condition under which his declaration was made, we think deceased was fully conscious that his end was at hand, and that his declaration was made under the realization and solemn sense of impending death, and therefore hold that the proper predicate was laid.

The question as to the admissibility of the latter part of his statement, to wit, that "Dee House killed me, and killed me without cause," presents a more serious question. The distinguished counsel for appellant very strongly urge that the expression "he killed me without cause" is not a statement of fact, but only the expression of an opinion, and hence not admissible in

evidence.   The courts of last resort in the various states are undoubtedly somewhat divided upon this question, as will be seen from an inspection of the very elaborate and able briefs of counsel on both sides of this case, though the large majority hold that the words used in this case, and kindred expressions, are admissible as statements of fact, and not mere expressions of opinion. For an exhaustive collation of authorities on this point, see Wigmore on Evidence, vol. 2, § 1447, and notes thereunder.   This court has twice directly passed upon the question at issue.   In the case of *Payne v. State*, 61 Miss. 161, Judge CAMPBELL, speaking for this court, says that the statement "that the defendant shot him without cause was a statement of fact, and not an opinion or inference of the declarant," and was admissible.   In the case of *Power v. State*, 74 Miss. 777, 21 South. 657, this court, speaking through Judge WOODS, said: "The evidence of the statement made by the deceased to the accused to the effect that 'you have killed me without cause' was properly admitted as a dying declaration, as well as a statement made to the accused and not denied by him."   Inferentially this court adopted the same view in the cases of *Kendrick v. State*, 55 Miss. 436, and *Lipscomb v. State*, 75 Miss. 559, 23 South. 210, 230.

To us the true and proper test as to admissibility is whether the statement is the direct result of observation through the declarant's senses, or comes from a course of reasoning from collateral facts.   If the former, it is admissible; if the latter, it is inadmissible.   *State v. Williams*, 67 N. C. 12; *Lipscomb v. State*, 75 Miss. 559, 23 South. 210, 230.   If the facts, as shown by all the testimony, as in the case of *Jones v. State*, 79 Miss. 309, 30 South. 759, could not have been known to the declarant, then his statement would necessarily be founded on inference, rather than known facts, and would be an opinion not admissible; but if, as in this case, everything, as shown by all the evidence, was fully known to declarant, we fail to see why his statement that the killing was without cause was not the statement of a fact, and admissible.   We prefer to stand with the majority

of the courts and with our own previously expressed opinion, and hold that the declaration in this case was one of fact, and not one of mere opinion.

We therefore hold that the judgment of the lower court in admitting this dying declaration was correct, and it is affirmed.

*Affirmed.*