## JOHNSON *v.* STATE.*

(Division B.   Nov. 2, 1925.)

[105 So. 742.   No. 24930.]

1. HOMICIDE.  *Evidence held to sustain conviction for murder.*
   Evidence examined, and *held* sufficient to justify a verdict of guilty of murder.

2. HOMICIDE.  *To sustain conviction of murder, it is not indispensable that motive be shown.*
   It is not indispensable that motive be shown in order to sustain a conviction of murder.

3. HOMICIDE.  *In murder case, use of deadly weapon may justify inference of malice on part of accused.*
   In a murder case, the use of a deadly weapon may justify the inference of malice on the part of defendant.

4. HOMICIDE.  *Deliberate design to effect death of another may be formed in instant.*
   The deliberate design to effect the death of another may be formed in an instant.   There is no particular measure of time necessary for its formation.

5. HOMICIDE.  *Instruction on self-defense in murder case held not error.*
   The following instruction for the state in a homicide case *held* not erroneous: "The court instructs the jury that to make a homicide justifiable on the grounds of self-defense, the danger to the slayer must be either actual, present, and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to kill him, or do him some great bodily harm, and, in addition to this, that there was imminent danger of such design being accomplished, and hence mere fear, apprehension, or belief, however sincerely entertained by one person that another designs to take his life, will not justify the former in taking the life of the later party.   A party may have a lively apprehension that his life is in danger, and believe the grounds of

his apprehension just and reasonable and yet he acts at his peril. He is not the final judge; the jury may determine the reasonableness of the grounds upon which he acted."

*Headnotes 1. Homicide, 30 C. J., Section 557; 2. Homicide, 30 C. J., Section 539; Motive not essential to sustain conviction of murder, see 13 R. C. L., p. 761; 3. Homicide, 30 C. J., Section 350 (Anno); presumption of malice arising from use of deadly weapon, see note in 38 L. R. A. (N. S.) 1081; 13 R. C. L., p. 771; 3 R. C. L. Supp., p. 82; 5 R. C. L. Supp., p. 709; 4. Homicide, 29 C. J., Section 97; Element of deliberation and premeditation in homicide, see 7 L. R. A. (N. S.) 1056; 13 R. C. L., p. 767; 3 R. C. L. Supp., p. 81; 5. Homicide, 30 C. J., Section 623.

APPEAL from circuit court of Leflore county.

HON. S. F. DAVIS, Judge.

Minnie Johnson was convicted of murder, and she appeals.   Affirmed.

*Gardner, Odom & Gardner,* for appellant.

Our principal contention is that *the verdict of murder is contrary to the law and evidence.*  The verdict of murder is not supported by the evidence.   The essential elements of murder are lacking.   The state's proof made out a case of manslaughter, and nothing more.   An analysis of the proof will support our contention.   There is nowhere in the record a word of positive proof as to malice.   The testimony of the state's witnesses, on the other hand, negative such idea and makes out a clear case of manslaughter.

Even though we should admit that malice might be inferred from the previous quarrel, which we do not, before a case of murder could be made, we must find that the testimony of the appellant as to defending herself was a pure fabrication and false, and further, that the state's witnesses testified falsely with reference to the deceased snatching up the cards and taking up the lamp.   In other words, to sustain the verdict of murder we must infer that both the appellant's testimony and that of the state's witnesses is at least untrue in their

material parts and finally base the verdict of murder solely upon the inference from the appellant's testimony. By such a process it certainly never could be said by this court that the state had made out a case of murder beyond a very reasonable doubt. The verdict of murder, we respectfully submit, should be based on facts or positive proof, and not on inferences. *Pigott* v. *State,* 107 Miss. 552, 65 So. 583.

Instruction No. 4, granted for the state, is confusing, calculated to mislead the jury, does not correctly state the law and should not have been given. It tells the jury that the appellant could not plead self-defense unless the danger was "actual, present and urgent," making no provision for apparent danger. As we understand the law, the accused has as much right to defend himself when the danger is apparent as if same were real, qualified, of course, by the limitation that the danger must be reasonably apparent. Therefore, since the instruction deprives the accused of the right to defend himself from reasonably apparent danger, he is cut off from a substantial right by this instruction. It is true the instruction is qualified by the clause "or the slayer must have reasonable ground to apprehend a design on the part of the deceased to kill him or to do him some great bodily harm." Yet in our judgment this does not cure the defect in the instruction, because the qualifying clause by no means makes it clear that the accused had a right to act on appearances. Such an instruction was condemned in *Ingram* v. *State,* 62 Miss. 142;

Another objection to this instruction is that it tells the jury that in addition to the other qualifications of appellant's right to defend herself, the danger must be imminent. We submit that the danger does not have to be imminent *in fact.* It is only necessary that it be *apparent* danger and *apparently* imminent.

The latter part of the instruction tells the jury that it is the final judge and "may determine the reasonableness of the grounds upon which accused acted." It

does not inform the jury that it must determine whether or not the grounds upon which the accused acted were reasonable. It simply says the jury "may." It is thus seen that, by this instruction, the court tells the jury that it is not for the accused to say whether or not the grounds were reasonable, but that the jury "may" say whether or not the grounds were reasonable. In other words, the instruction leaves it uncertain as to how the reasonableness is to be determined. It only states positively that the accused cannot determine this. The instruction fails to give the jury any standard by which it is to determine whether or not the action of the accused was reasonable but such a standard was fixed by our court in *Scott* v. *State,* 65 Miss. 287.

The appellant was improperly convicted, the verdict is not supported by the law or the evidence, and, therefore, the case should be reversed and remanded.

*J. L. Byrd,* assistant attorney-general, for the state.

The record shows sufficient evidence of malice to warrant the finding of the jury. The testimony of the appellant, found in the record at pages 36 and 37, furnishes the motive and the malice. It is not every killing which happens on the spur of the moment that is manslaughter. This court has said that the provocation must be substantial and not merely of fleeting, fancied wrong. *Preston* v. *State,* 25 Miss. 383.

The jury in the instant case was fully warranted in finding that the superinducing cause was not present and that the murder was committed without any provocation whatever.

Complaint is made of instruction No. 4, granted to the state. Counsel is frank enough to admit that the same instruction was objected to by him and criticised in the argument of another case heretofore decided by this court, and that the court refused to hold that the instruction was erroneous and did not reverse the case. That

case, as we recall it, was the case of *John Stucky* v. *State,* affirmed by this court on June 8, 1925. Counsel advances no new argument and cites no authority not heretofore cited and this court having declined to reverse on this instruction in the case above cited, we presume that it will not reverse here. In this case, the lower court merely followed the course approved by the court in the cited case. We submit that the instruction was proper.

ANDERSON, J., delivered the opinion of the court.

Appellant, Minnie Johnson, was indicted and convicted in the circuit court of Leflore county of the murder of Henry Martin, and sentenced to the penitentiary for life. From that judgment she prosecutes this appeal.

The state's evidence tended to make the following case: The killing occurred at night in a house in Greenwood occupied by appellant and deceased. Appellant, deceased, and three other negroes were in the house engaged in gambling. One of the party, Clarence Hardiman, lost what money he had in the game. He borrowed some money from the deceased, and got back into the game, and won some money from appellant. Appellant became angry at the fact that she had lost in the game, and upbraided the deceased for letting Hardiman have the money with which to win her money, claiming that the money deceased let Hardiman have was her money. The deceased denied that he had let Hardiman have any of the appellant's money, and thereupon threw two dollars into appellant's lap. Robert Hughes, another one of these negroes in the game, won one dollar and fifty cents of this two dollars from appellant. At this, appellant became very angry; thereupon deceased picked up the lamp which was sitting on the floor and took the cards used in the game from appellant. Whereupon appellant said, "There is going to be a battle," and went toward the bed, and came back to the fireplace with an open knife in her hand. At that time the deceased was standing near the fireplace without any weapon in his

hand, and made no demonstration toward the appellant. Appellant approached deceased, and, as she did so, the deceased ran toward the door as if to make his escape, but the door was locked, and for that reason he was unable to get out. Deceased ran around the room with appellant in pursuit stabbing at him. He tried to ward off her blows, holding a chair between them, but without effect. Appellant and deceased finally got together, and soon fell on the bed. After so doing, deceased called on those present to take the knife away from her—that she was stabbing him. One or more of those present took the knife away from her by wrenching it out of her hand. At some time during the combat appellant had stabbed the deceased twice in the heart, either one of which wounds, a physician testified, would have been fatal. The deceased died in a few minutes after he and appellant were separated. Appellant went on the witness stand and testified in her own behalf. She made a case of self-defense. She testified that deceased was the aggressor all the way through the difficulty, and that she was on the defensive. She admitted in her testimony, however, that early in the night before the gambling began she and deceased had had a quarrel about seven dollars that deceased had taken which she claimed belonged to her.

Appellant contends that the verdict of murder is contrary to the law and the evidence; that under the evidence appellant should not have been convicted of a greater offense than manslaughter. That position means, of course, that the trial court ought to have peremptorily instructed the jury that they could not find appellant guilty of a greater offense than manslaughter. In considering this question, the evidence must be taken most strongly against the appellant. So, viewing the evidence both for the state and for the appellant, we are of the opinion that it was sufficient to go to the jury on the question of whether appellant was guilty of murder. The appellant and deceased had quarreled earlier in the night, as she admitted in her evidence. After the

company assembled and the game began, according to the state's evidence, the quarrel was renewed by appellant when an altercation between appellant and deceased followed resulting in a combat between them. The state's evidence showed that she was the aggressor until the fatal stab took place, which resulted in the death of the deceased; that at no time was the deceased the aggressor, and that at no time did the deceased attempt to kill appellant or do her any great bodily harm.

It is not indispensable that motive be shown in order to sustain a conviction of murder. Sometimes the motive may die with the dead man, or be locked up in the breast of the slayer. *House* v. *State,* 94 Miss. 107, 48 So. page 3. Under the facts in this case, the jury were warranted in inferring the presence of malice from the use of the deadly weapon, the knife with which the mortal wound was inflicted. *Riley* v. *State,* 109 Miss. 286, 68 So. 250. The deliberate design to effect the death of another may be formed in an instant. There is no particular measure of time necessary for its formation. We are of the opinion that the evidence was sufficient to justify the verdict of the jury.

The appellant complains of the action of the court in granting instruction No. 4 for the state in this language:

"The court instructs the jury that, to make a homicide justifiable on the grounds of self-defense, the danger to the slayer must be either actual, present, and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to kill him, or to do him some great bodily harm, and in addition to this that there was imminent danger of such design being accomplished, and hence mere fear, apprehension, or belief, however sincerely entertained by one person, that another designs to take his life will not justify the former in taking the life of the later party. A party may have a lively apprehension that his life is in danger, and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final

judge; the jury may determine the reasonableness of the grounds upon which he acted.''

Appellant makes the following criticism of this instruction: That it told the jury that appellant could not set up self-defense, unless the danger ''was actual, present, and urgent,'' making no provision for apparent danger; that it told the jury that, in addition to other qualifications of appellant's right of self-defense, the danger must have been imminent; that the latter part of the instruction told the jury that they were the final judges, and ''may determine the reasonableness of the grounds upon which the accused acted,'' and did not inform the jury that they had to determine whether or not the grounds upon which appellant acted were reasonable; that the instruction failed to give the jury any standard by which it was to determine whether the action of the appellant was reasonable. We are of the opinion that none of these criticisms are well founded. The jury were told, in substance, by this instruction that to justify a homicide on the ground of self-defense, the slayer must have been in danger, real or apparent, of death or great bodily harm at the hands of the deceased at the time of the killing, and that such danger was actually or apparently present and impending.

The instruction might have been shorter, and thereby made more forcible, but we think it properly defined the law of self-defense as applicable to the facts of this case, and that therefore appellant's criticism of the instruction is not well founded.

*Affirmed.*