WILLIAMS *v.* STATE.

(En Banc. June 6, 1932.)

[142 So. 471. No. 30159.]

476|

Lamar Watson, of Greenville, for appellant.

T. J. Lawrence, of Rolling Fork, and Lamar Watson, of Greenville, for appellant.

W. D. Conn, Jr., Assistant Attorney-General, for the state.

478

Argued orally by **T. J. Lawrence**, for appellant, and by **W. D. Conn**, Assistant Attorney-General, for the state.

**Ethridge, J.**, delivered the opinion of the court.

Jake Williams, the appellant, was convicted in the circuit court of Issaquena county on a charge of murder; found guilty, and the death sentence was imposed.

Williams killed a man named Johnson, a tenant on his place, near sundown on November 9, 1931.

According to the state's witnesses, the appellant came to the home of the deceased at a time when deceased was near a barn tying a cow. The appellant was riding a mule, having in his hands a Winchester rifle. The deceased asked appellant what he was going to do with the gun, and the appellant replied, "It is my land and my gun; the best thing for you to do is to move on." Nothing further passed at that time, but at the time of the killing the appellant went to the house of the deceased and asked for him and was told that the deceased was driving towards the house then in a truck. The appellant, thereupon, went in the direction from which the deceased was approaching, and, according to the

state's witnesses, stated that his rent was due, and that he wanted it. The deceased replied that he had not made anything much, and what he had made would have to be paid to the federal government for its aid. That the appellant then went to the place where his gun was, took the gun, and fired at the deceased, hitting him in the breast. The state's witnesses, the wife and daughter of the deceased, who were eyewitnesses, stated that the deceased had started to drive on, and was in the truck at the steering wheel, and had turned to look at the appellant when the shot was fired, and that the deceased then fell out of the truck, which, being in gear, went on some several feet distant from the body. The bullet entered the breast about three inches from the right nipple, cutting through the bone, and through the collar bone and lodged under the skin. It either penetrated the heart, or cut a blood vessel intimately connected with the heart, as the deceased practically bled the entire blood of his body from said wound. The shots being heard, some witnesses who were at a distance came where the body was, and they sent for the sheriff or deputy sheriff who went to arrest the appellant. When the deputy sheriff came to arrest the appellant, he picked up his gun, but the deputy sheriff stated that he did not fire it, as the deputy sheriff told him that, if he did not surrender, he would burn his house down and get him when he came out, and that the appellant then surrendered. The deputy sheriff asked him why he killed the deceased, and he (appellant) stated that the deceased owed him rent and would not pay it, or words equivalent to this statement.

The appellant testified that when he went to the home of the deceased at the time of the killing to collect his rent, the deceased became angry and said he had told the appellant not to bother him any more about the rent, and that the deceased picked up an ax and was approaching appellant with this ax when he fired the shot;

that he picked up his gun where he had put it that evening while picking cotton, and that he shot in self-defense. He further stated that after the shot was fired the deceased walked back towards the truck and fell on its fender. There was blood on the fender and none inside the truck. The body was very bloody, and was several feet distant from the truck when the other parties came to the scene of the killing. He also testified that, on Saturday prior to the killing, he was at Glen Allen, and that the deceased was there with a sack of corn which he was selling, or trying to sell; that he asked the deceased if he thought it was right, under the law, for him to sell stuff grown on the place when he had not paid the rent; that the deceased replied that was the way he had always done, and that he was tired of the appellant bothering him about it, and said he would cut the appellant's throat if he said anything more to him, and pulled out his knife and started toward appellant when friends of the appellant remonstrated, and that the deceased did not proceed with his threats after the remonstrances, in which testimony he is supported by another party, his friend testifying to like effect. He further testified that, at the time of the killing, the wife and daughter of the deceased could see what was happening, but were not close enough to hear what was said. The wife and daughter testified that they did hear the conversation as above detailed.

It is argued that the evidence is insufficient to justify the infliction of the extreme penalty upon the appellant.

We think the testimony is ample to warrant the verdict of guilty, and the question as to whether the extreme penalty should be inflicted was for the jury, who alone had the power to determine whether life imprisonment should be inflicted.

It has often been stated in the law that malice may be suddenly formed, and that it requires no particular period of deliberation, to make a killing deliberate and

malicious within the law. Aside from that, there is ample evidence in the record, including that of the defendant as to the previous difficulty, that might have operated on the mind of the appellant so as to make him deliberately and with malice aforethought kill the deceased. The appellant assigns as error the court's refusing a number of instructions requested by him, one of which reads as follows: "The court instructs the jury for the defendant that if there are two reasonable theories arising out of the evidence in this case, one favorable to the state, and the other favorable to the defendant, it is the duty of the jury to accept the one favorable to the defendant, although the one favorable to the state is the more reasonable, and supported by the stronger evidence."

This instruction is not applicable to cases depending upon the testimony of eyewitnesses, but is applicable only to cases depending upon circumstantial evidence, in which, of course, theories must arise from admitted or proven facts. If two reasonable theories are entertainable from admitted circumstances, of course, the one favorable to the defendant is proper. Irving v. State, 100 Miss. 208, 56 So. 377; Smith v. State, 101 Miss. 283, 57 So. 913; Simmons v. State, 106 Miss. 732, 64 So. 721; and Hogan v. State, 127 Miss. 407, 90 So. 99.

Two theory instructions created considerable confusion in the minds of lawyers and judges subsequent to the decision in the case of Thompson v. State, 83 Miss. 287, 35 So. 689; but, in recent years we have repeatedly held that it was not error for courts to refuse such an instruction in cases depending upon eyewitnesses. It is unnecessary now to decide what the result would be if the case at bar was depending entirely upon circumstantial evidence.

We have examined the instructions given for the state and for the appellant, and we think the law was sufficiently and correctly announced applicable to this case.

most of the refused instructions were correctly refused, but, whether they were correct in principle or not, the court is not required to continue to give instructions when the case has been covered by those given.

We find no reversible error in the record, and the judgment will be affirmed, and Thursday, July 14, 1932, fixed as date of execution.

Affirmed.