## Talbert *v*. State.

(In Banc. March 4, 1935. Suggestion of Error overruled April 1, 1935.)

[159 So. 549. No. 31516.]

**J. O. Day**, of Tutwiler, for appellant.

**Barbour & Henry**, of Yazoo City, for appellant.

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

246

Argued orally by **W. A. Henry,** for appellant.

**McGowen, J.,** delivered the opinion of the court.

On an indictment for murder in the killing of Jesse Lewis, appellant was tried, convicted, and sentenced to be hanged by the lower court, and appeals here.

In August, 1934, Meadow Pressgrove, a white man, carried a truckload of twenty-one negro men from Minter City to Lambert on Sunday afternoon to engage in a game of baseball. They lost the game, and returned to Minter City. It was after dark when they reached

what the witnesses called Shoe Bridge railroad crossing. Two of the witnesses, who were in the truck at the time, testified that they saw the appellant and a woman standing on the side of the highway as they went over the railroad crossing; that the appellant had his hand on his pistol, was close enough to touch the truck, and after they had passed him a few feet he stepped back and fired one shot in the direction of the truck. After they had proceeded a short distance it was discovered that one of the passengers on the truck had been wounded and another, Jesse Lewis, had been shot through the head, from which wound he subsequently died.

One state witness told the officers that appellant had fired the shot, and the other state witnesses identified appellant as being there at the crossing. Some of the witnesses for the state testified positively that there was no talking, boisterous conduct, or indecent language used on the highway at or near the point where this shooting occurred. According to all four witnesses presented by the state, no word was spoken between the appellant and the occupants of the truck.

Witness Smith, who owned a plantation on which appellant's wife lived, testified that Shoe Bridge railroad crossing was in the second district of Tallahatchie county, Mississippi, and makes it sufficiently clear that the venue was in that county.

The appellant testified that on several occasions before this occurrence trucks had passed his house, which was a short distance from the highway near this crossing, and that insulting remarks had been directed toward his wife by occupants of a truck, but it was not shown that the occupants of this truck were guilty of such conduct. He further testified that he had sent a boy to a store, the boy had remarked that he was afraid to come back after dark, and the appellant took his pistol, which he had owned several years, and walked with his wife to meet the boy. As they were proceeding along the highway the

truck passed and some one thereon addressed insulting lascivious remarks to his wife. He testified further that he did not shoot any certain way, that he shot to "stop them and scare them from that bad talk," and that he "didn't intend to kill anybody." His wife corroborated his testimony as to the indecent language addressed to her, and stated that she did not know that her husband was armed, and did not see him fire the shot. The appellant had never been arrested before, according to his evidence. He was arrested at his work about a week after the shooting and very soon thereafter was tried. He stated to witness Smith, who made the arrest, that he shot at the truck because of the "nasty talk" addressed by some occupants thereof to his wife.

First. We think the venue was sufficiently shown by the witness Smith.

Second. Appellant hints that this court should hold that the homicide was accidental, but there is not a line of testimony to support a theory of an accidental shot, in fact, the appellant's own statement is that he fired the pistol, and he gives the reason therefor, but unfortunately he fired it in the direction of the truck loaded with human beings. He shot as the truck was going from him down grade, therefore he was on an elevation above the truck, and evidently the pistol was pointed toward the truck for the shot to wound one occupant thereof and kill another.

Third. It is contended that the state should have procured from the court an instruction on manslaughter. The appellant did not ask for any manslaughter instruction, therefore, he cannot complain in this behalf. See Cosey v. State, 161 Miss. 747, 138 So. 344.

Fourth. It is next insisted that the appellant is entitled to a new trial in this case because the verdict of the jury is against the overwhelming weight of the evidence, and that at most the appellant could only be guilty of manslaughter. This contention is based upon the insult-

ing language testified to by appellant and his wife as being addressed to her by some occupant of this truck. We are not called upon to again take up the question of whether or not insulting language, although addressed to a female member of the accused's family, can ever be offered to reduce a homicide from murder to manslaughter, for the reason that the state's evidence is to the effect that no such language was used, and no reason appears here for not permitting the jury to pass upon that conflict in the evidence. As we see it, it was peculiarly within the province of the jury to pass upon the conflict in the facts. The use of the deadly weapon, under the circumstances detailed here, raised a presumption of malice. Lamar v. State, 63 Miss. 265; Riley v. State, 109 Miss. 286, 68 So. 250; Johnson v. State, 140 Miss. 889, 105 So. 742; McGehee v. State, 138 Miss. 822, 104 So. 150. The jury might well have believed that appellant was incensed against some unknown travelers on that highway who had theretofore insulted his wife.

Fifth. It is next contended that it was error for the court to grant the state the following instructions:

"The court instructs the jury for the state that murder is the killing of a human being with malice aforethought without authority of law, by any means or in any manner, when done with the deliberate design to effect the death of the person killed."

"The court instructs the jury for the state that the killing of a human being without authority of law, when done in the commission of an act eminently dangerous to others, and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder."

Appellant contends that both of these instructions in a proper case are correct abstract statements of law, but that in this case it was improper for the court to in-

struct the jury on deliberate design, and cites in support of his contention Gentry v. State, 92 Miss. 141, 45 So. 721, and Faulkner v. State (Miss.), 154 So. 338. These instructions reflect the sense and meaning of our statute. Section 985, Code of 1930, subds. (a) and (b). This statute but epitomizes the common law found thus stated in East's Pleas of the Crown, c. 5, sections 2, 4, 12, 19, 20, as quoted by Judge Shaw in Commonwealth v. Webster (Mass.), 5 Cush. 295, 52 Am. Dec. 711: "Murder is the voluntary killing of any person of malice prepense or aforethought, either express or implied by law; the sense of which word malice is not only confined to a particular ill-will to the deceased, but is intended to denote, as Mr. Justice Foster expresses it, an action flowing from a wicked and corrupt motive, a thing done malo animo, where the fact has been attended with such circumstances as carry in them the plain indications of a heart regardless of social duty and fatally bent upon mischief. And therefore malice is implied from any deliberate, cruel act against another, however sudden."

In the case at bar, a deadly weapon was discharged at a truck, with twenty-two persons crowded thereon, by the appellant, and from the act the jury might find malice and motive. See House v. State, 94 Miss. 107, 48 So. 3, 21 L. R. A. (N. S.) 840; Johnson v. State, 140 Miss. 889, 105 So. 742; Buckler v. State (Miss.), 157 So. 353, and Williams v. State, 163 Miss. 475, 142 So. 471. Appellant's sole defense here is that insulting words were addressed to his wife, which is contradicted by the eyewitnesses for the state.

The indictment in this case followed the statutory mandate as follows, "Did wilfully, unlawfully, feloniously and of his malice aforethought kill and murder Jesse Lewis, a human being." This indictment is in the language of and authorized by section 1211, Code of 1930, and this statute was intended to relieve the pleader of

the necessity of setting forth in an indictment the manner and details of a homicide.

The Gentry case, supra, dealt with a charge of assault with intent to kill and murder a designated person, and therein the evidence showed that the appellant shot into a wagon occupied by that designated person and several others. The court there held that it was error to instruct the jury that proof of a design to kill the designated person was unnecessary in order to warrant a conviction. Likewise, the Faulkner case. Assault, or an assault and battery with intent to kill and murder, is a statutory crime not recognized at the common law, and intent is the gist of the offense, and those cases have no application to a charge of murder preferred in an indictment based upon and conforming to the statute. This court has held in Ross v. State, 158 Miss. 827, 131 So. 367, that the holding of the court in the Gentry case has no application to an indictment for the crime of murder, when the intent is as to the person killed or any human being.

Sixth. It is next insisted that the court erred in the form of verdict instruction in the event the jury found the defendant guilty of murder. The instruction informed the jury what action the court would take on the verdict in the matter of sentencing the defendant on both forms thereof involving life imprisonment, but did not tell the jury that if it returned a general verdict of guilty as charged, it would be the duty of the court to sentence the appellant to be hanged. There was no possible chance for the jury to be misled by this instruction. It was advised fully as to the two conditions upon which the punishment by life imprisonment could be imposed, and under those circumstances was bound to know that a failure to fix life imprisonment would result in the imposition of the death penalty if it returned a verdict of guilty as charged. The jury knew it was trying a capital case, and the instances in which the life imprisonment could

be imposed were clearly stated; there was no chance for the jury to misunderstand this instruction. We are not unmindful of the case of Walton v. State, 57 Miss. 533, wherein the majority of the court held that a failure in the form of verdict instruction to advise the jury of the resulting sentence in the event it disagreed upon the punishment was reversible error. The court there held that the jury could not be presumed to know the law in that event. Since that time the statute has made a failure to agree on the punishment on the part of the jury result in a life sentence instead of a death penalty, and no such misunderstanding could now arise, especially in view of the clearly stated terms of the instructions here. It is our opinion that the district attorney should not have omitted from the instruction that if the jury found the appellant guilty as charged the death penalty would be imposed by the sentence of the court, but we cannot see that the jury was misled or that the appellant was prejudiced thereby. There is no reversible error in this case.

Affirmed, and Friday, April 19, 1935, is set for the date of the execution.