J. S. FORD v. THE STATE.

1. CRIMINAL LAW. *Evidence. Burden of proof of insanity.*

The burden of proof is always upon the state in criminal trials, and it must prove, beyond a reasonable doubt, the sanity of the accused at the time of the commission of the act with which he is charged, though the presumption of his sanity will warrant a conviction in the absence of rebutting evidence sufficient to raise a reasonable doubt. *Cunningham* v. *State*, 56 Miss., 269, cited.

2. SAME. *Temporary and habitual insanity. Lucid intervals. Presumption.*

Where the general or habitual insanity of the accused is shown on a trial for murder, the state has the burden of showing that the homicide was committed during a lucid interval; but where only temporary insanity is shown at a time anterior to the homicide, without raising a reasonable doubt that it existed at the time of the homicide, the presumption of sanity dispenses with proof of a lucid interval. *Ricketts* v. *Jolliff*, 62 Miss., 440, cited.

3. INSANE DELUSIONS.  *Distinction between right and wrong.*

  It is immaterial whether the accused is sane or insane upon other
    subjects, if his insanity in respect to the homicide is of such a
    nature as to break down his capacity to distinguish between right
    and wrong.  *Grissom* v. *State*, 62 Miss., 167, cited.

4. SAME.  *Uncontrollable impulse.*

  It is not true that a party is not responsible for an act done under
    an uncontrollable impulse which is the result of insane delusions,
    unless the act was the direct result of mental disease of a char-
    acter so aggravated as to overwhelm the reason, judgment and
    conscience.  *Cunningham* v. *State*, 56 Miss., 269, cited.

FROM the circuit court of Noxubee county.

HON. S. H. TERRAL, Judge.

The appellant was convicted of the murder of his wife.
The defense relied on in the court below was his insanity at
the time of the homicide, and, to support the same, evidence
was introduced tending to show partial and intermittent in-
sanity.  The state introduced much testimony in rebuttal.

The seventh instruction for defendant, as asked, was in the
following words:

"7. It is the duty of the state to show that, at the time the
offense was committed, the defendant was sane, and if, from
the whole testimony in the case, the jury entertain a reason-
able doubt of his sanity, they must find him not guilty."

This instruction was granted after being so modified as to
read as follows:

"7. Every person is presumed to be sane until (shown to
be) otherwise, and it is incumbent on defendant to establish his
insanity or to raise a reasonable doubt thereof, and if, from
the testimony in the case, the jury entertain a reasonable doubt
of his sanity, they must find him not guilty."

The sixth and tenth instructions, as asked by defendant, were
in the following words:

" 6. If the jury believe, from the evidence, that the defendant,
at the time he shot his deceased wife, was suffering from men-

tal disease, and that condition of mind was sufficient to break down in the mind of the defendant, at the time of the shooting, the distinction between right and wrong, it is immaterial whether he was totally or only partially insane on other subjects, and the verdict should be not guilty."

"10. If the jury believe, from the evidence, that defendant, at the time of the killing, was a sufferer from some mental disease, which broke down in him the capacity to distinguish between right and wrong with reference to the act he did, then it is immaterial whether he was totally or only partially insane on other subjects. There can be no such thing as motive without mental accountability, and this cannot co-exist with an incapacity from mental disease to distinguish between right and wrong."

These instructions were granted after being so modified as to read as follows:

"6. If the jury believe, from the evidence, that the defendant, at the time he shot his deceased wife, was suffering from mental disease, and that diseased condition of mind was sufficient to break down in the mind of the defendant, at the time of the shooting, the distinction between right and wrong, they should acquit him."

"10. If the jury believe, from the evidence, that defendant, at the time of the killing, was a sufferer from some mental disease which broke down in him the capacity to distinguish between right and wrong, with reference to the act he did, then they should acquit."

The thirteenth instruction for defendant, as asked, was in the following words:

"13. If, from all the evidence in the case, the jury have a reasonable doubt of the prisoner's sanity at the time of the shooting, that is sufficient to raise a reasonable doubt of his guilt, and the jury should acquit."

This instruction was given after being modified so as to read as follows:

"13. If, from all the evidence in the case, the jury have a reasonable doubt of the prisoner's sanity at the time of the shooting, the jury should acquit."

The following instruction was granted for the state:

"7. If the jury believe, from the evidence, that the defendant was at times so insane as to be unable to distinguish right from wrong, but that at other times he was sane and of sound mind, then it is incumbent on the defendant to show that at the time of the killing he was so insane as to be unable to distinguish between right and wrong, or to raise a reasonable doubt as to his capacity to distinguish between right and wrong."

The defendant asked the following instructions with reference to insane delusions, which were refused by the court, viz.:

"Any species of insane delusion exempts from punishment the perpetrator of an act committed under its influence. The belief that the taking of the life of another is the appropriate remedy for a minor or imaginary evil, is such a delusion that homicide committed under such belief is not liable to punishment."

"One who, under an insane delusion, shoots another, is irresponsible when the act is the product of the delusion."

Exceptions to the action of the court below, on all of the foregoing instructions, having been duly reserved, the same was made the basis of a motion for a new trial, and assigned for error on appeal.

*Thomas J. O'Neill,* for the appellant.

1. The evidence shows quite conclusively that the appellant was mentally irresponsible for the terrible act he committed, but the burden of proving his sanity was not upon him, but the state. The prosecution had to show that the "conscious mind" acted, and that malice existed beyond a reasonable doubt. The action of the trial court in so modifying the seventh instruction asked by the defendant as to render it contrary to this view of the law, constitutes reversible error. *Cun-*

*ningham* v. *State*, 56 Miss., 269. This is also true of its modification of the thirteenth instruction asked by defendant.

2. It was also error to strike out of the sixth instruction asked by defendant the words "it is immaterial whether he was totally or partially insane on other subjects, and the verdict should be not guilty." This modification of the court destroyed the possibility of acquittal, except on the proof of total, general or complete insanity on all subjects. The court's modification of defendant's tenth instruction is subject to the same objection.

3. The charges asked by the defendant in reference to insane delusions were wholly unobjectionable, and should not have been refused. Nor should the charge that each juror was at liberty to withhold from his fellows the reason for any doubt he might have of the defendant's sanity have been refused. It announced a correct principle, and was designed to meet the argument of the district attorney.

4. The seventh instruction granted for the state is subject to the same objection urged against the court's modification of defendant's seventh and thirteenth instructions. It puts the burden of proving insanity upon the defendant, which is not the law in this state.

*Wiley N. Nash*, attorney-general, for the state.

The facts shown by the record disclose a case of wife murder by a worthless and vicious husband, who resorts in his peril to the plea of insanity. That defense is not sustained by the testimony of his own witnesses, while the rebutting testimony for the state completely disproves it.

The criticism of the court's modification of some of the defendant's instructions, and of its granting the seventh instruction for the state, is without merit. The capacity to distinguish between right and wrong at the time of the act is the true test of criminality where mental derangement is set up as a defense, and the court below was guided throughout by this

familiar principle. *Flanagan* v. *People*, 52 N. Y., 467; *Kelly & Little* v. *State*, 3 Smed. & M., 528. And the presumption of sanity will prevail if the evidence for the defendant has raised no reasonable doubt as to his sanity. *Cunningham* v. *State*, 56 Miss., 273.

The jury were very fully instructed, and the charges, taken as a whole, correctly present the law of the case. This court will not reverse for the refusal of a charge that merely announces an abstract proposition, or one that announces a principle as to which the jury have been already instructed.

WHITFIELD, J., delivered the opinion of the court.

It is not denied that appellant killed his wife, nor that, if sane when he killed her, it was a most atrocious murder. We intimate no opinion as to the weight of the testimony offered to show the insanity of appellant at the time of the killing, but, such testimony being in, the sole inquiry is as to the correctness of the instructions on the law applicable to insanity as a defense. In the main, the learned judge below announced the law correctly, and the modifications of appellant's instructions, except as herein indicated, were correct.

The seventh instruction should have been given as asked by the appellant. The modification announces the proposition that the burden of showing insanity at the time of the killing was on the defendant. The burden of proof never shifts in a criminal case. It is true that every man is presumed to be sane. It is also true that this presumption of sanity will be sufficient to sustain the burden resting on the state, of proof of sanity on the part of defendant at the time of the commission of the act charged, if defendant offers no testimony to meet the presumption sufficient to raise, out of the evidence in the case, a reasonable doubt of the defendant's sanity at the time he committed the act. But it is none the less true that the state carries the burden of showing, as an essential element in the accountability of defendant, the sanity of the defendant at the time, and of

showing it beyond all reasonable doubt, as distinctly announced in *Cunningham* v. *State*, 56 Miss., 276, and in numerous authorities. Buswell on Insanity, §§ 166–169, inclusive. See, especially, *State* v. *Bartlett*, 43 N. H., 224; 4 Am. & Eng. Enc. L., p. 715 (7).

The sixth and tenth instructions should also have been given as asked. As modified, they merely announced what had already been announced in other instructions. But they were asked to secure the benefit of the declaration of this court in *Grissom* v. *State*, 62 Miss., 169, that "if the disease goes to the extent of breaking down the distinction between a knowledge of right and wrong [in reference, we presume, in the concrete, to the particular act in question], it is immaterial whether the sufferer be totally or partially insane on other subjects." These two instructions are, on this point, in the very language of this court in *Grissom* v. *State*, *supra*, and should have been given unmodified. The thirteenth instruction also should have been given as asked. Its refusal would not, however, in view of the other charges on the general subject, be, of itself, reversible error. Precisely what is meant by the seventh instruction, given for the state, it is difficult to say. The rule on the subject is that, where general habitual insanity is shown to exist, it is presumed to continue, and the burden of showing that the act was committed in a lucid interval is upon the state, and in the sense that that burden is not satisfied by any presumption of sanity, but must be satisfied by proof on the part of the state of the lucid interval at the time of the doing of the act. But if only temporary or recurrent insanity, as from paralysis or epilepsy, be shown, there is, in the nature of things, no presumption therefrom of continued, general, habitual insanity, and when all that the evidence in the case shows is this latter form—temporary insanity—without raising a reasonable doubt as to whether it existed at the time of the act in question, the state may rely on the presumption of general sanity with which it started out, without offering proof

as to the lucid interval, for the presumption of sanity with which the defendant is invested at the outset is a general and universal one, embracing, as a whole all its parts, the included presumption of sanity at all times, including the particular time when the act in question was committed, unless the evidence raises a reasonable doubt, not of temporary, but of general, insanity, and hence of insanity at the particular time. Buswell on Insanity, §§ 187, 188, 190–193, inclusive, with authorities; Am. & Eng. Enc. L., vol. 9, p. 615; *Ricketts* v. *Jolliff*, 62 Miss., 448.

It will be understood, of course, that we are here discussing the doctrines as to the presumed continuance of sanity and insanity. Of course, a reasonable doubt, arising out of the whole evidence, as to defendant's sanity at the time of the commission of the act, entitles him to an acquittal. We are not sure what the instruction meant, and it should be made clear on the new trial, in the light of what has been said above.

The instructions as to insane delusion were open to the criticisms made of the second clause of the ninth instruction in *Cunningham* v. *State, supra.* We do not now—as not being now necessary—pass upon the correctness of the action of the court in refusing the instruction asked by the appellant as to the right to demand a juror's reasons for his view. For the errors indicated, the judgment is reversed and cause remanded for a new trial.

*Reversed and remanded.*