CARTER *v.* STATE.

(In Banc. April 8, 1946.)

[25 So. (2d) 470. No. 36009.]

Jackson & Young, of Jackson, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

Willie Carter was convicted in the Circuit Court of Newton County of the murder of G. S. Worthen in June 1944. On appeal here, 198 Miss. 523, 21 So. (2d) 404, the judgment of conviction was reversed because from the record it appeared that appellant was then mentally incapable of remembering and intelligently stating the facts on which his defense rested.

In the first trial, no point was made of appellant's inability to take care of himself and assist his counsel at the trial because of his mental condition, but we considered it here nevertheless, as an exception to the general rule that questions not raised in the trial court cannot be raised for the first time on appeal, because it was an error "affecting fundamental rights . . . or affecting public policy," citing authorities. When the

case was called for trial from which the present appeal was taken, counsel for appellant dictated into the record a suggestion of insanity to the extent that appellant was not then mentally capable of appearing and intelligently stating the facts on which his defense rested and offered evidence in support thereof. See Skinner v. State, 198 Miss. 505, 23 So. (2d) 501. Appellant's grandparents, who had raised him, and others who knew him and had known him for some time, and also two psychiatrists, testified before a circuit court jury impaneled and sworn to try this special issue. Certain documentary evidence was also offered, including the honorable discharge of appellant from the Army of the United States, and a letter from Dr. Mitchell, Superintendent of the Mississippi State Hospital at Whitfield, appellant having been admitted thereto January 5, 1944, and having walked out therefrom, without leave later and prior to the slaying. There is no record of any psychosis at the hospital, in the evidence. The jury heard the testimony, received the instructions of the court and the arguments of counsel, and returned a verdict to the effect that appellant was capable of conducting a rational defense and assisting his counsel therein. In the Skinner case, supra, we upheld the right of a defendant charged with crime orally to suggest to the court that he may be insane and that motion thereon may be orally made, but that it must be accompanied by affidavits, or the offer of witnesses to prove insanity, or inability to plead or conduct rational defense. We held also that such investigation could not be in the chancery court while a party under indictment was held in jail by an order of the circuit court, as he was then within the exclusive jurisdiction of that court, and approved refusal of a chancery court jury investigation in the Skinner case. However, the jury impaneled in the instant case was in the circuit court. In our judgment, there was ample proof before this jury to sustain its verdict. Later, when the trial was heard on the facts of the actual homicide, the verdict of the jury was rein-

forced by the manifest ability displayed by appellant when on the witness stand there. He also testified on the motion under discussion.

An examination of the Court's opinion on the previous appeal of the case at bar reveals that appellant's mind appeared then so clouded by disease or a drug administered to him by the sheriff as not to permit him to remember and intelligently state what occurred at the homicide. In the present record, on his examination to determine whether or not he was mentally capable of making a rational defense, of remembering and intelligently stating the facts on which it rested, it appeared that he had also been given a drug, barbital, which, according to the expert testimony tended to bring about grogginess and a condition resembling drunkenness from alcohol. It seems also from this source that barbital is administered to epileptics to prevent spells, but that there is also another drug, sodium dallantum, which has the same effect without beclouding or befogging the mental processes. Barbital, it seems, causes the patient to become slow, to have difficulty in answering things correctly, and to bring about dullness of the mind. This appeared in the examination of his mental condition at the time of trial to be somewhat the state of mind of appellant when he testified, and the same condition appeared from the quotation of evidence in our previous opinion, supra. One of the psychiatrists said: "He is not supposed to be that way under sodium drug and he is not supposed to be that way from the effects of epilepsy." Furthermore, the testimony of the psychiatrists, who observed this appellant on this preliminary investigation to determine his mental ability adequately to participate in his trial, was, that he answered most questions as correctly as anybody could, and that he was then able to confer with his counsel in a reasonable way in his defense against the charge of murder. To the same effect was the testimony of the other psychiatrist, and both of these experts were introduced by and on behalf of appellant.

It was stated that if he were denied barbital for thirty-six hours, the retarding process would disappear and he could confer with his attorney and prepare his defense on the murder charge to the extent of his desire. The evidence offered by appellant on this investigation demonstrated clearly that he was in condition to proceed with his trial, and hence we think the jury was correct in so holding, particularly as the court set the actual trial on the merits of the case two full days later. Then, apparently there was complete elimination of all effects from the barbital.

The appellant appropriately assigned several errors in connection with the trial in the court below, but within the framework of these assignments, his counsel here says that on this appeal and on this record there are but two issues: "(1) Was appellant capable of making a rational defense under constitutional guarantees? (2) Was appellant guilty of murder or manslaughter?" We have already decided against appellant on issue number one, which now brings us to issue number two. In the trial of this case, it appears from the instructions and from the examination of witnesses that appellant submitted in his behalf the question of his mental capacity at the time of the slaying of the deceased, and self-defense, and also obtained an instruction on manslaughter. It is argued that appellant should have been acquitted because he did not have at the time of the homicide capacity to form "malice aforethought," or therefore the offense became thereby distinguished from murder and was manslaughter. The facts necessary for discussion of the point here are briefly: That at the age of seven years appellant received a blow on the head, and that four years later he developed epilepsy, having epileptic fits during the years, and that at the time of trial he was twenty-four years of age. It is contended that this pathological condition through the years had affected him to the point where he was insane at the time he shot and killed Mr.

Worthen, who was the day marshal in the Town of Union in Newton County.

On the occasion involved, appellant had left the home of his grandfather, with whom he lived, and had caught a ride with a white man, from whom he borrowed $3 during the course thereof. He reached Union, stating to several people he was looking for his aunt, but whom no one seemed to know. He roamed around town, in the negro quarters and elsewhere. He finally came upon the nightwatchman, who was operating a soft drink stand of some sort, and under the guise of buying a soft drink appellant appears to have maneuvered the nightwatchman into such a position as enabled him to seize the officer's pistol, which he did. He then robbed the officer of money and cigarettes also, backed off, and disappeared. It was near daybreak. The officer went to a local hotel where the deceased day marshal lived, awakening him, and the two began a search for appellant. Ultimately they came upon him in the negro waiting room at the depot in Union. There the slaying occurred, as hereinafter described. It will therefrom be seen that the jury was justified in finding the appellant guilty of murder, unless prevented by the condition of his mind on that occasion. In other words, unless it be shown that he was insane to the degree set by the law to prevent his punishment for the offense.

The proof is overwhelming that at the time of the homicide, appellant had the ability to recognize and appreciate the nature and quality of the act and ability to distinguish right from wrong. This proof largely came from his own witnesses. In our jurisprudence,—and it is the rule generally,—this is sufficient to establish his criminal responsibility. Smith v. State, 95 Miss. 786, 49 So. 945, 27 L. R. A. (N. S.) 461, Ann. Cas. 1912A 23. In his appeal from the previous conviction it appears that appellant was his only witness in the trial below, but on this appeal several witnesses testified at his instance, and from their testimony the jury was amply justified in concluding

that at the time of the commission of the offense appellant was responsible under the rules of law. Since, therefore, he did know the nature and quality of his act, and the difference between right and wrong, he was capable of both deliberation and malice.

The chief distinction between murder and manslaughter is the presence of deliberation and malice in murder and its absence in manslaughter. Guest v. State, 96 Miss. 871, 52 So. 211. The appellant, as stated, asked and was granted an instruction on manslaughter. The state was granted the usual murder charge. These instructions left the decision of the character of the offense to the determination of the jury. It will be noted also that appellant continued to shoot the deceased after he had become helpless from wounds already inflicted. In the case of Cooper v. State 194 Miss. 592, 11 So. (2d) 207, 209, this Court said: "Appellant contends that the verdict should not in any event be for a higher crime than manslaughter. It is sufficient to state in reply to this assignment that although the facts amply warrant a verdict of murder, both the defendant and the State received instructions authorizing the jury to designate the crime, if it be so found, as manslaughter." In the case at bar, Mr. Worthen shot his pistol only twice, while the appellant shot five times. Appellant was hit once and deceased three times. In the case of Jones v. State, 178 Miss. 636, 174 So. 546, 549, it was held: "The facts that the appellant killed Dodd with a deadly weapon, and that there were two shots fired by the appellant, would supply a presumption of malice, thus warranting the jury in believing that appellant shot Dodd maliciously and without legal justification."

Before the officers arrived at the depot, appellant had been informed that they were looking for him, and upon the entry of Mr. Worthen, the deceased, into the waiting room, he twice inquired of the officer if he were looking for him. Appellant thereupon turned to leave the waiting room, and Mr. Worthen was still therein and, hence,

back of him. His pistol was in the officer's hand by his side, and not presented toward appellant at all. The pistol appellant had stolen from the night marshal was in his coveralls. Instead of continuing out of the door, however, the appellant suddenly drew his pistol, without provocation or warning, and turned and wheeled to face the deceased, when the officer was doing nothing to him, and fired as he wheeled, and continued to fire until the death of the officer resulted. The officer wounded appellant in the abdomen, demonstrating that appellant had completely wheeled around before the officer fired. If any special time was required, appellant had ample time within which to form a premeditated design to take the life of Mr. Worthen. But no particular period of deliberation is required to make killing deliberate; Motley v. Smith, 172 Miss. 148, 159 So. 553, since malice may be suddenly formed; Williams v. State, 163 Miss. 475, 142 So. 471; and deliberate design to effect the death of another may be formed in an instant; Johnson v. State, 140 Miss. 889, 105 So. 742.

The jury, in our judgment, was correct in returning a verdict against appellant finding him guilty of murder on the evidence, and under the law, and we shall not disturb it. The verdict of the jury being guilty as charged, he was sentenced to death. The court did not deny to appellant any constitutional right, so that the authorities cited in his brief, Brown et al. v. Miss., 297 U. S. 278, 56 S. Ct. 461, 80 L. Ed. 682, and Powell v. Alabama, 287 U. S. 45 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527, have no application here. Since we find no error in the trial of the case the judgment of the lower court is affirmed, and Thursday, May 9, 1946, is set for the date of execution.

Affirmed.