## Butler *v.* State.

June 8, 1953

No. 38649 34 Adv. S. 5 65 So. 2d 244

*Womack & Womack* and *James T. Bridges,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

HOLMES, J.

The appellant, Johnnie Butler, and her son, J. C. Butler, were jointly indicted in the Circuit Court of Humphreys County for the murder of Ora Butler, who was the daughter-in-law of the appellant Johnnie Butler, and the wife of the said J. C. Butler. A severance was applied for and granted, and the appellant, Johnnie Butler, was tried at the July 1952 term of the Circuit Court of Humphreys County and convicted of murder. The jury disagreed as to her punishment and she was accordingly sentenced to imprisonment in the state penitentiary for life. From this conviction, she prosecutes this appeal.

## ON MOTION TO STRIKE.

The original transcript of the record in this case was filed in this Court on October 10, 1952. At the February 1953 term of the Circuit Court of Humphreys County, the district attorney filed a petition praying a correction in the transcript of the notes of the court reporter taken on the original trial of said cause. It was set forth in said petition that the office of the attorney general had called to petitioner's attention the fact that the original transcript of the evidence showed that Dr. J. J. Kazar, a witness for the state, testified that the house in which the deceased died was located in Holmes County, and that upon an examination of the steno-

graphic notes of the court reporter taken on the original trial of said cause, it appeared that the witness Kazar stated that the house in which the deceased died was located in Humphreys County, and that the original transcript of the court reporter's notes was, therefore, in error. Accordingly, the petitioner prayed a hearing on said petition upon due notice to the appellant. Notice of the time fixed for the hearing of said petition was duly given to the appellant and the appellant and her attorney appeared at the hearing thereof, and at the conclusion of the hearing the trial judge ordered that the original transcript of the evidence filed in this Court be corrected so as to show that the witness Kazar testified that the house in which the deceased died was located in Humphreys County. Accordingly, a transcript of the testimony and proceedings on the hearing of said petition was filed in this Court on February 9, 1953, as an amendment to the original transcript. On January 10, 1953, the appellant filed in this Court her assignment of errors. On February 19, 1953, the appellant filed a motion to strike the amendment to the original transcript. This case was argued and submitted to this Court on May 4, 1953.

It is the contention of the appellant that after the filing of the original transcript in this Court, this Court acquired exclusive jurisdiction of the record in the cause and that the application to correct the transcript should have been made to this Court and that the trial court was without power or authority to correct the same. This contention of the appellant is contrary to the previous decisions of this Court. In the case of Brown v. Sutton, 158 Miss. 78, 121 So. 835, the Court said: ▮▮ "Every court of record has general authority over its own records. The power of such a court to correct its records so as to make them speak the truth is inherent. ▮▮ The records of a court can be corrected or altered only by the court itself; and another court has no authority to make such corrections, even though it has appellate jurisdiction

over the court whose records are sought to be corrected." In the case of National Box Company v. Bradley, 171 Miss. 16, 157 So. 91, the Court held that the application for the correction of the court reporter's transcript of the trial proceedings should be made before the submission of the case to this Court. The error referred to and appearing in the court reporter's original transcript is fully established without dispute and the application for correction having been timely made, that is to say, having been made before the submission of the case to this Court, the trial court had the power to order the correction and properly did so. We are accordingly of the opinion that the motion to strike should be, and it is, overruled.

## ON THE MERITS.

The parties involved in the series of events which culminated in the death of the deceased are related, as are also the two principal witnesses for the state who testified that they saw the appellant inflict the mortal blows upon the deceased. The deceased was the wife of J. C. Butler, the son of appellant who was jointly indicted with the appellant. The deceased, at the time of her death, was 16 or 17 years of age and had been married to J. C. Butler about a year and a half. The appellant, J. C. Butler, the deceased Ora Butler, and Rosella Butler, another daughter of the appellant, all lived in the same house. The case as made by the state was substantially as follows:

Throughout a period of time preceding the death of the deceased, the deceased was subjected to constant mistreatment by the appellant. This mistreatment on the part of the appellant consisted in whipping the deceased, depriving her of proper nourishment, requiring her to occupy a room in the house, the door of which was nailed off from the remainder of the house, excluding her from eating her meals with other members of the household, and subjecting her to continuous abuse. In the early

afternoon of the day of the difficulty which resulted in the death of the deceased, the deceased wanted some flour to make bread and appellant became angry with her and struck her. The deceased then ran out of the house and into the chicken house pursued by the appellant with a shovel. Appellant followed the deceased into the chicken house and struck her on the head with the shovel some four or five times and left her lying in the chicken house. This occurred about 2 or 3 o'clock in the afternoon, and she remained in the chicken house until about 5 or 5:30 o'clock. It was raining and cold and the clothing of the deceased became thoroughly wet. She was thought by the appellant to be dead. About 5:30 o'clock two young men who had come to the house picked her up and carried her into one of the shed rooms of the house, placing her in the doorway with her body inside of the room and her feet partially outside of the doorway. An undertaker was sent for and came in an ambulance about 9:45 p. m. that night. When the undertaker and his assistant arrived, they discovered that the deceased was still alive and placed her in the ambulance on a cot and covered her with a sheet. They placed her in the ambulance because there was a heater in the ambulance and it was warm there. Dr. J. J. Kazar of Tchula was called and he arrived shortly after the ambulance had arrived. He examined the deceased and found that there were fresh lacerations on her upper legs. He made no thorough examination of the head of the deceased. He administered adrenalin and stayed with her until she died some four or five hours later, at about 2:30 a. m. Her death occurred on April 20 or April 21, 1952, and thereafter on or about July 11, 1952, the sheriff had the body disinterred and Dr. Kazar performed an autopsy. Dr. Kazar gave it as his opinion as a result of the autopsy that the cause of her death was a severe concussion resulting from a blow on her head with some blunt instrument. He had previously, about a week following the death of the deceased, signed

.and filed a death certificate showing that the cause of death was exposure and that the place of death was in Holmes County, Mississippi. After performing the autopsy, however, and as a result of his examination of the deceased, he expressed the firm opinion that the cause of death was concussion resulting from a blow on the head with a blunt instrument. He also testified that the place of death instead of being in Holmes County as shown on his death certificate was in fact in Humphreys County. After the appellant was arrested and placed in jail and charged with the murder of the deceased, she sent for the sheriff and in the presence of the sheriff and his deputy voluntarily admitted. that she had inflicted with a shovel the blows on the head of the deceased. On her cross-examination on the trial, she admitted this confession to the officers but said that the same was not true. The two witnesses who testified that they saw the appellant strike the deceased with the shovel were Rosella Banks, a daughter of the appellant, and L. T. Banks, who, following the death of the deceased and prior to appellant's trial, married Rosella.

The proof on behalf of the appellant consisted in a denial of her guilt and expert testimony on the part of two physicians who testified that a blow on the head sufficient to cause a severe concussion would result in an abrasion on the head or some external evidence of the blow. They further testified, however, that a concussion might result without causing an abrasion or external evidence of the blow. Dr. Kazar had previously testified that he found no external evidence on the head of the deceased but that as a result of the autopsy and his examination made pursuant thereto, there was evidence of an injury to the brain, which in his opinion was caused by a blow with a blunt instrument.

The evidence on the question of the guilt or innocence of the appellant was conflicting and clearly presented an issue for the jury, and was properly submitted to the jury, and the evidence is amply sufficient to support

the verdict of the jury. It is in fact not urged on this appeal by the appellant that the evidence was insufficient to create an issue of fact for the determination of the jury, or that the verdict of the jury is against the overwhelming weight of the evidence.

The appellant contends on this appeal that the record fails to show proof of venue. We do not find that this contention is supported by the record. The amendment to the transcript of the record which corrected the testimony of Dr. Kazar as to the place of death reveals that Dr. Kazar testified that the house in which the deceased died was in Humphreys County. His testimony to this effect as shown by the correction of the original transcript of the court reporter is undisputed. This properly laid the venue in Humphreys County regardless of where the mortal blow was struck. Sec. 2430 of the Miss. Code of 1942 provides that where the mortal stroke or other cause of death occurs or is given or administered in one county and the death occurs in another county, the offender may be indicted and tried in either county. It is clear, therefore, that the venue in Humphreys County was fully established by the evidence.

It is further argued by the appellant that the evidence on behalf of the state failed to prove the corpus delicti. The record likewise fails to sustain the appellant in this contention. Proof of the deceased's death and the finding of the body is undisputed. Two witnesses for the state testified that they saw the blows inflicted upon the head of the deceased by the appellant with a shovel. The appellant herself freely and voluntarily confessed to the sheriff and his deputy that she struck the blows. Dr. Kazar testified that the deceased died from a concussion resulting from a blow on the head by some blunt instrument. By a proper instruction granted to the defendant, the jury were permitted to determine the truth or falsity of the evidence on this issue, and by their verdict they found that the death of the deceased was brought about through a criminal agency for which the

appellant was responsible, and the evidence, in our opinion, clearly warranted this verdict.

It is further contended by the appellant that the state placed in issue the reputation and character of the appellant although the same had not been placed in issue by the appellant herself. This contention manifestly is based on the theory that the evidence showing the course of conduct of the appellant toward the deceased, consisting of the mistreatment of the deceased, was character evidence. This is a misconception of this evidence. It was not character evidence; it was evidence of a course of conduct offered to show the ill will of the appellant toward the deceased. The evidence was competent for this purpose. In 22 C. J. S., p. 1109, it is said: "As a general rule, evidence of other crimes than that charged is competent when it tends to establish a common scheme, plan, system, design, or course of conduct, at least where such other crimes are similar to, and closely connected with, the one charged, and where committed at about the same time or at a time not too remote." The evidence of mistreatment extending continuously over a period of time up to the death of the deceased was competent to show the ill will of the appellant toward the deceased and competent on the question of malice. We are of the opinion, therefore, that the record does not sustain the contention of the appellant that the state placed in issue her reputation and character when the same had not been placed in issue by the appellant herself.

It is further complained by the appellant that the trial court erred in failing to order a mistrial upon the grounds that prejudicial questions were propounded by the district attorney in his examination of the appellant and of the state's witness, Sheriff Shelton. One of the incidents forming the basis of this complaint is found in the district attorney's cross-examination of the appellant. The district attorney inquired of her if it was not a fact that the deceased had given birth to a baby

out back of the house and that she, the appellant, had forced the deceased to bury it. The appellant denied such an occurrence and the state made no proof of such an occurrence. The appellant made no objection to the questions at the time they were propounded by the district attorney, and made no request of the court to be permitted to reserve objection thereto. At the close of the testimony for the defense, the appellant, however, made a motion to exclude all reference to the birth of a baby by the deceased and this motion was overruled, and we think properly so, for the reason that the objection presented by this motion came too late. In the case of Williams v. State, 171 Miss. 324, 157 So. 717, it was held that ■■■ the general principle governing the time of the objection to the admission of evidence is that it must be made as soon as the applicability of it is known or could reasonably have been known to the opponents unless some special reason makes a postponement desirable to him and not unfair to the proponent of the evidence. Again in the case of Mabry v. State, 71 Miss. 716, the court held that where there was no objection to certain evidence when it was offered and given, it was too late to raise an objection by motion to exclude.

Another incident forming the basis of appellant's complaint occurred during the examination by the district attorney of state's witness Sheriff Shelton when called in rebuttal. ■■■ The district attorney propounded to him the following interrogatory: "Did you ever have occasion to talk to her (appellant) about the birth of a baby of Ora Butler's?" To this question, counsel for the appellant objected, saying: "I object to that and say that it is grounds for a mistrial as an attempt to bring in something else that has nothing to do with this case." Thereupon the district attorney withdrew the question and the trial judge directed the jury to disregard it. No other proof was made or offered by the state relative to the matter referred to by the district attorney

in his question propounded to the witness Shelton. While counsel for the appellant stated that such question formed grounds for a mistrial, the record does not disclose that he made a motion for a mistrial, or that the trial judge was called upon to rule upon a motion for a mistrial.

While we are of the opinion that the questions propounded by the district attorney to the appellant and to the witness Shelton were improper, and that an objection thereto, if the same had been timely made, should have been sustained, yet we are of the further opinion that the objection to the questions propounded to appellant were not timely made and can not now be availed of, and further, that no prejudice resulted to the appellant by reason of the question propounded to the witness Shelton, since it was not answered by the witness and was withdrawn by the district attorney and the jury were instructed by the court to disregard it.

Upon a review of the entire record, we are of the opinion that the appellant received a fair and impartial trial, and that the record is free from any reversible error.

Accordingly, the motion to strike the amendment to the original transcript is overruled, and the judgment of the court below is affirmed.

Motion to strike overruled and judgment affirmed.

*McGehee, C. J.,* and *Kyle, Ethridge,* and *Lotterhos, JJ.,* concur.