287 So.2d 759 (1974)
R.C. HERRON
v.
STATE of Mississippi.
No. 47589.
Supreme Court of Mississippi.
January 7, 1974.
Rehearing Denied January 28, 1974.
*760 Billy J. Jordan, Thomas R. Mayfield, Joe O. Sams, Jr., Columbus, for appellant.
A.F. Summer, Atty. Gen., by Billy L. Gore, Special Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
This is an appeal case from a manslaughter conviction of the Circuit Court of Lowndes County, Mississippi, wherein the appellant, R.C. Herron, was indicted and tried on a charge of the murder of Mrs. June Carol Strickland Symons. The appellant offered the defense of insanity of the accused at the time of the homicide.
The defendant testified that on July 2, 1971, at approximately 4:00 P.M., Mrs. Symons offered him a ride home from his place of employment at Picks Truck Stop. The appellant's automobile had been left at a garage for repair at the time. Appellant had a bag containing some money and a .38 caliber revolver. He put the bag under the seat of Mrs. Symons' automobile. Appellant said that when they stopped at a stop sign near Suggs' Barbecue, Mrs. Symons reached under the seat into the money bag, brought out the gum, and said that she had a score to settle with a big *761 blonde-headed girl at Suggs'. He said that he grabbed Mrs. Symons' arm and struggled with her for the possession of the pistol. During the struggle the pistol was discharged twice. The automobile came to a halt, and the appellant got out of the automobile. Appellant claimed that he did not remember anything after he got out of the automobile.
There were eyewitnesses who did know what occurred. They testified that when they saw the automobile driven by Mrs. Symons, it was apparently out of control, and that one of them heard two shots. A woman [Mrs. Symons] got out of the automobile on the driver's side, holding her arm across her stomach as she ran toward the witness. The witness observed that the woman was bleeding. The defendant Herron got out of the automobile with a pistol in his hand. He then followed Mrs. Symons to the back of an automobile and pointed his pistol at her. As the witness turned away she heard two shots. The witness saw the defendant run back to the car [belonging to Mrs. Symons] and get something out of the automobile. The defendant then went back out into the street where he fired two more shots and finally another shot. The defendant was then observed lying by Mrs. Symons on the ground. Other witnesses saw the defendant reload his pistol and shoot himself. Defendant asked one of the witnesses to "Get help for the lady" and get "Carol to the hospital." He asked others to call the police.
Two medical doctors testified as defense witnesses. Dr. Gilbert Spencer, the surgeon who treated the defendant, testified that the defendant was suffering from gunshot wounds in the abdominal area. He said the appellant's emotional condition immediately after the shooting was "abnormal". He said appellant was oriented as to time, place, and person, but that he was suffering from an emotional condition known as a "flat effect". He said that the defendant knew "when he was, where he was, who he was", but that he had a "flat effect", "no mood".
Dr. Bernard Ellis, a medical doctor who had studied psychiatry and was qualified, but was not at that time a Board certified psychiatrist, testified from information obtained by an examination of the defendant and from a study of the testimony introduced in a habeas corpus hearing, together with other data gathered from some members of defendant's family, that it was his opinion that the defendant did not know the difference between right and wrong at the time he shot the deceased, Mrs. Symons, and that he was at that time insane. He said, however, that the defendant was sane prior to the homicide, was sane following the homicide, and at the time of the trial. He explained that in his opinion the defendant was at the time of the shooting suffering from a "dissociative reaction" and that this condition was a "psychotic degree reaction".
The state offered Dr. Robert L. McKinley, Jr., a Board certified psychiatrist, as a professional psychiatrist. Dr. McKinley testified that "a dissociative reaction" in a patient is a form of neurosis and a patient suffering from "a dissociative reaction" is not suffering from insanity nor is he psychotic. He also testified that during eight years' practice of psychiatry he had never known a case where a patient was totally sane at one point and then insane for a brief period only to be totally sane again immediately thereafter.
The appellant contends that he was entitled to a directed verdict of not guilty because it is said that the State of Mississippi failed to prove the sanity of the accused after his sanity had been put in issue.
The appellant cites the rule expressed in Cunningham v. State, 56 Miss. 269, 31 Am.Rep. 360 (1879) as follows:
"We think the true rule is this: Every man is presumed to be sane, and, in the absence of testimony engendering a reasonable doubt of sanity, no evidence on *762 the subject need be offered; but whenever the question of sanity is raised and put in issue by such facts, proven on either side, as engender such doubt, it devolves upon the State to remove it, and to establish the sanity of the prisoner to the satisfaction of the jury, beyond all reasonable doubt arising out of all the evidence in the case." 56 Miss. at 276.
The foregoing rule has been approved in Waycaster v. State, 185 Miss. 25, 187 So. 205 (1939); Gambrell v. State, 238 Miss. 892, 120 So.2d 758 (1960); and Butler v. State, 245 So.2d 605 (1971). See also Pollard v. State, 53 Miss. 410 (1876); Ford v. State, 73 Miss. 734, 19 So. 665 (1896). However, this rule is not universally accepted as will be seen from 26 Am.Jur. Homicide § 291, at 355 (1940).
The theory on which the appellant bases his appeal is that one doctor testified that at the time of the homicide the accused did not know the difference between right and wrong, and appellant says that this is a good defense of insanity under the M'Naghten rule [Harvey v. State, 207 So.2d 108 (1968)]; therefore, since the State did not meet the burden of showing beyond a reasonable doubt that the accused was sane at the very instant he shot Mrs. Symons, the court should have granted a directed verdict of acquittal.
We cannot agree with this thesis under the facts in this case for several reasons. First  the issue of the insanity of an accused is a jury issue. Section 2575, Mississippi Code 1942 Annotated (1956) [Miss. Code Ann. § 99-13-7 (1972)].
The rule above cited and followed by the cases cited points up the fact that it devolves upon the state to remove the doubt and to establish the sanity of the prisoner to the "satisfaction of the jury."
The jury in making this determination will take into consideration all the testimony surrounding the homicide, including such expert testimony as may be offered as an aid in its effort to reach a true verdict. Kearney v. State, 224 Miss. 1, 79 So.2d 468 (1955). Expert testimony as an aid to the jury, see 20 Am.Jur. Evidence § 775, at 647 (1939).
The same argument presented in the present case was offered in Kearney, supra, and in answer to this argument, this Court had the following to say:
"... [W]hile it is true that aside from the statement of the sheriff that he believed that the defendant knew what he was doing that night, no witness for the State would express an affirmative opinion on the issue of whether the defendant knew right from wrong on the occasion of the shooting. However, they did relate facts and circumstances which occurred at or about the time of the shooting that would amply warrant a jury in finding that the defendant was angry with his wife and that he shot her pursuant to a premeditated design with the conscious intent to kill and murder her, ..." 224 Miss. at 12, 79 So.2d at 473.
Of course, the jury is not required to accept the opinion of an expert witness, particularly in sanity hearings, since a layman may have an opinion as to the sanity of another, and may testify as to another's sanity based upon facts previously stated. Jurors themselves may from their experience in life have an opinion based upon the surrounding facts, acts and circumstances developed in the trial of a case. Moreover, the conclusions of an expert witness are not infallible. His opinion must be based upon his study and his own experience and if either is lacking, deficient, or immature, his conclusions may fall short of the accuracy essential to a true verdict.
In the case of Smith v. State, 245 So.2d 583 (Miss. 1971) the defendant was charged with murdering a woman with whom he was supposedly in love. A defense of insanity was interposed and supported by the testimony of two psychiatrists who stated *763 that in their opinion the defendant was insane at the time of the shooting. The State presented a staff member of the hospital where the defendant was examined as a rebuttal witness, and he testified regarding the examination of the defendant. The appellant argued that the evidence was insufficient to support the verdict of guilty against him. The Court answered:
"The thrust of appellant's argument on this point is that the jury was bound to accept the expert opinions of the two psychiatrists who testified for him upon the issue of insanity. The opinions of these experts were, of course, competent and relevant to the issue. However, uncontradicted evidence before the jury acquainted the jurors with the conduct of the appellant before, at the time of, and subsequent to the homicide. * * * It was the prerogative of the jury, and it was its duty, to consider all of this evidence. The jury was not deprived of the right to use common sense or of applying the lessons of human experience in resolving the question of whether the appellant had or had not appreciated the nature and consequences of his act and had or had not known that it was wrong. The expert opinions of the psychiatrists were not conclusive upon that issue." 245 So.2d at 585.
The most recent case on this issue is Blackwell v. State, 257 So.2d 855 (Miss. 1972). There, the defendant entered a defense of insanity to a charge of homicide. The Court spoke to the issue as follows:
"The other assignment of error vigorously argued in this case is that the defendant overcame the presumption of sanity and the state failed to meet its burden of establishing the sanity of the defendant beyond a reasonable doubt. This argument is to a considerable extent premised on the fact that the defendant offered testimony of a psychiatrist and the state did not introduce expert evidence on rebuttal. However, we hold that the issue of insanity was for the jury under the facts of this case." 257 So.2d at 856.
A recent Fifth Circuit Court of Appeals case on this issue is United States v. Harper, 450 F.2d 1032 (5th Cir.1971). There the Court said:
"The issue of the defendant's insanity, when raised as a defense to a criminal prosecution, is to be decided by the jury on the basis of all the evidence. Therefore, although expert opinion evidence on the issue cannot be arbitrarily ignored, it is not binding on the jury. Rather it is only advisory in nature. Indeed, it is the jury's function to assess the credibility of the expert witnesses and the weight to be given to their testimony." 450 F.2d at 1037.
The jury in the instant case had testimony taken before it showing the fact that the psychiatrist was a student at the time he made the decision that the prisoner was insane; that his study of the patient was made six (6) months after the crime had been committed, at a time when the prisoner was sane. The psychiatrist testified that the prisoner was sane before the homicide and immediately thereafter. He testified that the defendant was suffering from "a dissociative reaction", a "psychotic degree reaction". Dr. McKinley, M.D., a "Board certified psychiatrist", testified that a "dissociative reaction" is a form of neurosis and is neither insanity nor psychosis, and that a person in this neurotic condition would normally know right from wrong.
The jury had a right to consider the fact that the acts of the accused at the time of the homicide indicated his knowledge that his acts were criminal. He tried to convince bystanders that his mistress shot him first; he requested the bystanders to call the police; at the hospital he wanted a lawyer. Moreover, there are many facts he admits knowing, including the fact that the *764 weapon used was his;[1] that she was driving the automobile at the time she was shot; that she came out of the automobile wounded, while he came out of the car with the gun in his hand; and that he called her "Carol, darling" while she was dying.[2]
Upon an examination of all the facts, we find no error in the failure of the trial court to have granted a verdict of acquittal.
It is apparent that the jury rejected the prisoner's contention that he was insane, but returned a manslaughter verdict based upon the prisoner's testimony that he and his mistress were scuffling over the lethal weapon at the time she was fatally wounded, although it might have returned a murder verdict.
The appellant contends with considerable energy that the following instruction should have been given by the trial judge:
"Instruction No. 9 for Defendant
The court instructs the jury for the defendant that, if the jury believe, from the evidence, that the defendant, at the time he shot Carol Symons, was suffering from mental disease, and that this condition of mind was sufficient to break down in the mind of the defendant, at the time of the shooting, the distinction between right and wrong, it is immaterial whether he was totally or only partially insane on other subjects, and the verdict should be not guilty."
It appears to us that the instruction is not applicable to the facts in the instant case of alleged temporary insanity. It is difficult to see where this instruction is applicable to the facts in this case. There is no evidence to indicate that the defendant was partially insane on one subject and not insane on other subjects. The defense offered here is that the defendant was temporarily totally insane so as not to know the difference between right and wrong for a short time, during which time he committed the horrible acts shown in the evidence. He alleges that his memory is a total blank as to his acts.
The case of Grissom v. State, 62 Miss. 167 (1884) cited by the appellant, is not applicable to the facts here shown. In Grissom, we find from appellant's brief that:
"From the testimony of a large number of reputable citizens of the county who had known the defendant ranging from ten to twelve years that the defendant was insane at times, and the testimony of his wife and Mr. John Brown that the defendant had one of his `crazy spells' the day of the killing, and the testimony of Beason, one of the State's witnesses, it does seem the proof was wholly insufficient to authorize the verdict given." 62 Miss. at 168.
Grissom is a case of partial insanity with lucid intervals for many years. It was the duty of the state to show that Grissom, who was partially insane, was sane at the time of the homicide. The instruction given in Grissom was amplified in Ford v. State, 73 Miss. 734, 19 So. 665 (1896), another case where the proof showed that the defendant was suffering from intermittent and partial insanity. This Court in Ford said that the Grissom instruction should have been given. The Court then pointed out, in discussing another instruction, the general law on this subject as follows:
"The rule on the subject is that, where general habitual insanity is shown to exist, it is presumed to continue, and the burden of showing that the act was committed in a lucid interval is upon the state, and in the sense that that burden is not satisfied by any presumption of sanity, but must be satisfied by proof on the part of the state of the lucid interval at the time of the doing of the act. But if only temporary or recurrent insanity, as from paralysis or epilepsy, be shown, there is, in the nature of things, no presumption *765 therefrom of continued, general, habitual insanity, and when all that the evidence in the case shows is this latter form,  temporary insanity,  without raising a reasonable doubt as to whether it existed at the time of the act in question, the state may rely on the presumption of general sanity with which it started out, without offering proof as to the lucid interval; for the presumption of sanity with which the defendant is invested at the outset is a general and universal one, embracing, as a whole all its parts, the included presumption of sanity at all times, including the particular time when the act in question was committed, unless the evidence raises a reasonable doubt, not of temporary, but of general, insanity, and hence of insanity at the particular time." 73 Miss. at 740-741, 19 So. at 665-666.
There is no evidence in this case to indicate that the prisoner had a mental disease, prior to the homicide, which could have caused his amnesia. It is admitted  to the contrary  that he was sane prior to the homicide and again sane after the homicide. The jury could reasonably believe from the testimony that the defendant had a sudden impulse to kill his mistress because of what occurred in the automobile. He said after the homicide, "She shot me first", and realizing what he had done to his mistress, he said, "Get help for the lady."
Sudden, uncontrollable impulse to commit crime is not a defense to a criminal charge in this state where the actor knows his acts are wrong. Burr v. State, 237 Miss. 338, 114 So.2d 764 (1959); Eatman v. State, 169 Miss. 295, 153 So. 381 (1934); Garner v. State, 112 Miss. 317, 73 So. 50 (1916); Cunningham v. State, 56 Miss. 269 (1879).
The general rule in Mississippi is set forth in Eatman v. State, supra, as follows:
"... [T]he defense of irresistible or uncontrollable impulse was declared in that case [Smith v. State, 95 Miss. 786, 49 So. 945, 946] to be unavailable, unless the uncontrollable impulse sprang from a mental disease existing to such a high degree as to overwhelm the reason, judgment, and conscience, in which case, as the court adds, the accused would be unable to distinguish the right and wrong of a matter." 169 Miss. at 299, 153 So. at 381.
This rule was followed and quoted in the later case of Burr v. State, supra.
The trial court properly refused to grant the Grissom instruction in this case. Moreover, there are other instructions granted the defendant which adequately covered the defense of insanity.
The appellant contends that the trial court committed reversible error in failing to grant a new trial because of an alleged prejudicial question asked the defendant on cross-examination. The trial court had determined in the absence of the jury that evidence of threats and hostility by the defendant toward Mrs. Symons prior to their final separation was too remote to be of probative value. The district attorney asked the defendant the following question:
"Mr. Herron, isn't it a fact that you wrote a letter to June Carol Symons telling her that you would kill her and take your own life?"
The defendant objected and the trial court sustained the objection. The defendant moved for a new trial. The court overruled the motion and promptly instructed the jury to disregard the question.
Ordinarily, such a threat is admissible in evidence to show malice. [Ladner v. State, 197 So.2d 257 (Miss. 1967); Cartee v. State, 162 Miss. 263, 139 So. 618 (1932)] However, where it is made too remote in time, the trial judge has discretion to refuse to permit such evidence to go to the jury. Raines v. State, 81 Miss. *766 489, 33 So. 19 (1902); Herman v. State, 75 Miss. 340, 22 So. 873 (1898).
Although there is authority that prejudicial questions propounded by the prosecuting attorney may in cases where the evidence is evenly divided require a reversal,[3] the great weight of authority holds that when an objection to the testimony is sustained and the jury is admonished to disregard the question, there is no reversible error. Cooper v. State, 218 So.2d 874 (Miss. 1969); Kelly v. State, 239 Miss. 683, 124 So.2d 840 (1960); Crawford v. State, 223 Miss. 189, 77 So.2d 923 (1955); Richey v. State, 220 Miss. 790, 72 So.2d 152 (1954); Butler v. State, 217 Miss. 750, 65 So.2d 244 (1953); Logsdon v. State, 183 Miss. 168, 183 So. 503 (1938). Compare McNair v. State, 223 Miss. 83, 77 So.2d 306, 84 So.2d 430 (1955).
We are of the opinion that the instruction given the jury to disregard the question here involved was followed by the jury and that defendant suffered no prejudice as a result of the question. We hold that the ruling of the court was not a reversible error. Holifield v. State, 275 So.2d 851 (Miss. 1973).
We find no error in the ruling of the court permitting the introduction of photographs of the body of the deceased, Mrs. Symons. The pictures had probative value to show the bullet wounds in her body. Kelly v. State, 278 So.2d 400 (Miss. 1973); Crosby v. State, 270 So.2d 346 (Miss. 1972); Ford v. State, 227 So.2d 454 (Miss. 1969); May v. State, 199 So.2d 635 (Miss. 1967).
We find no reversible error in the record of this case and, therefore, we affirm the judgment of the trial court.
Affirmed.
PATTERSON, INZER, SUGG and WALKER, JJ., concur.
NOTES
[1] See 26 Am.Jur. Homicide § 312, at 365 (1940).
[2] See 26 Am.Jur. Homicide § 323, at 373 (1940).
[3] Barlow v. State, 233 So.2d 829 (Miss. 1970); Murphy v. State, 226 So.2d 755 (Miss. 1969); Thompson v. State, 84 Miss. 758, 36 So. 389 (1904).