391 So.2d 1000 (1980)
Willie M. CARROL, Jr.
v.
STATE of Mississippi.
No. 52317.
Supreme Court of Mississippi.
December 17, 1980.
*1001 Rex K. Jones, Hattiesburg, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, SUGG and LEE, JJ.
SMITH, Presiding Justice, for the Court:
Willie M. Carrol, Jr. was indicted for murder in the shooting death of J.W. Hartwell. He was tried on that charge in the Circuit Court of Lawrence County, convicted and sentenced to life imprisonment. He has appealed, assigning as error requiring reversal:
(1) The trial court committed error in admitting evidence tending to show the commission of other crimes by appellant, such evidence not tending to establish identity, guilty knowledge, intent or motive.
(2) The trial court committed error in orally instructing the jury after the jury had retired for the purpose of considering its verdict.
Carrol and Hartwell were friends and neighbors in the China Lee Community of Lawrence County. On the afternoon of September 10, 1979 an argument between the two occurred on Hartwell's porch. Carrol began walking away from Hartwell in the direction of his nearby house trailer. The evidence is conflicting as to what occurred at this point. Carrol testified that Hartwell had followed him, taunting and threatening him. He said that Hartwell pulled a knife and advanced upon him. Carrol said that it was then that he had shot Hartwell and that in doing so he acted in self-defense. Hartwell died as the result of six gunshot wounds.
Carrol's claim that he had acted in self-defense was corroborated by the testimony of his daughter, who was an eyewitness to the shooting. Two other eyewitnesses disputed this testimony. They testified to the effect that they saw Carrol shoot Hartwell but did not see Hartwell advance upon Carrol with a knife.
After the shooting, Carrol asked a bystander to take him to the sheriff's office so that he might surrender. After having been driven about a mile, Carrol asked the driver to return to the scene as he was afraid that someone might remove the knife from Hartwell's body.
Afterward, when the sheriff arrived, he found Carrol at his trailer. Carrol pointed to Hartwell's body, told the sheriff that he had shot him, and gave the sheriff his gun. Hartwell was dead at the time. On examination of the body by the sheriff the only possible weapon found by him was a pocket knife "folded up" in Hartwell's back pocket.

POINT I:
The testimony which forms the basis of this assignment was elicited by the district attorney. Its purpose was to show that Carrol had carried a gun on his person prior to the killing of Hartwell.
Under questioning by the district attorney, the witness stated that he had seen Carrol carry a pistol. When the witness was asked if he had seen Carrol carry the pistol "around the house" there was an objection by defense counsel:
I object to this line of questioning, your Honor.
BY THE COURT:
I'll overrule the objection at this time.
(The district attorney continued)
Q. Where did he usually carry the pistol?
A. Well, when he would-
BY DEFENSE COUNSEL:
I object to that.
(District Attorney, Continuing)
A. -Carry it.
BY DEFENSE COUNSEL:
That has nothing to do with this case.
BY THE COURT:

*1002 All right, I'll sustain the objection unless a predicate is laid in the proximity of the time this occurred.
(The District Attorney Continuing)
During that day or maybe the day before this happened, did you ever see Willie Carrol with a pistol?
A. Oh, yeah.
Q. Right during this time?
A. Yeah. I didn't see him with it that day until he shot Hartwell.
Q. But did you see him with a pistol the day before-
DEFENSE COUNSEL:
I object to that, your Honor. That has nothing to do with it.
BY THE COURT:
I'll overrule the objection to that question.
(The District Attorney Continuing)
Q. Okay, you can answer that.
A. Well, I worked everyday. I didn't hardly see him everyday-I worked everyday.
Q. Well, within a few days right before this happened, did you ever see Willie Carrol tote a pistol around with him?
BY DEFENSE COUNSEL:
I object to that question. It's immaterial.
BY THE COURT:
I'll overrule the objection.
(The District Attorney Continuing)
A. Yes, I have seen him tote it.
Q. Do you know why he was toting it?
A. No, sir, I sure don't.
Q. Was he taking it to work with him?
A. Well, I don't know. I never did work with him. I don't know whether he was carrying it to work with him or not.
Q. But he was toting a pistol around?
A. He would tote one when he would be going off somewhere-just out riding around-
BY DEFENSE COUNSEL:
I object to that question and answer and move that the answer be striken.
BY THE COURT:
All right, I'll sustain the objection and advise the jury to disregard the answer.
It is now argued that this testimony was fatally prejudicial and that the trial court's actions with respect to it constituted reversible error. However, several aspects of the matter immediately present themselves. It is to be noted that, although objections were made from time to time, no specific grounds for such objections were assigned except that the testimony was "immaterial" or had "nothing to do" with the case. This Court has held repeatedly that where no specific ground for an objection is assigned that, ordinarily, the trial court cannot be put in error for overruling it. Stringer v. State, 279 So.2d 156, 158 (Miss. 1973). See also: Williamson v. State, 330 So.2d 272 (Miss. 1976); Pierce v. State, 289 So.2d 901 (Miss. 1974), Berry v. State, 288 So.2d 457 (Miss. 1974).
Be that as it may, at the conclusion of the examination relating to this subject, on objection of defense counsel the trial court sustained the objection and stated:
BY THE COURT:
All right, I'll sustain the objection and advise the jury to disregard the answer.
It is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. Forrest v. State, 352 So.2d 1328 (Miss. 1977), Herron v. State, 287 So.2d 759 (Miss. 1974), Myrick v. State, 290 So.2d 259 (Miss. 1974).
In Johnson v. State, 341 So.2d 660 (Miss. 1977), this Court stated that when a trial court sustains an objection to improper testimony and admonishes the jury not to consider it, it is presumed that the jury followed the directions of the trial judge.
Moreover, in this case, when the trial judge sustained defense counsel's objection and advised the jury not to consider the testimony, defense counsel did nothing further. Under the circumstances, the trial judge was justified in assuming that defense counsel was satisfied with his disposition *1003 of the matter, the objection having been sustained and the jury having been advised not to consider the objectionable testimony.
Under the stated circumstances, if defense counsel considered the admonitions by the trial judge inadequate, or if he considered that the matter was of such a prejudicial nature or had so inflamed the minds of the jurors against the defendant that the admonitions of the trial judge were ineffective in removing its harmful effect, it was necessary at that point that defense counsel move for a mistrial. The facts and circumstances reflected by the record in this case are not such as would require the trial judge, on his own motion, in the absence of any request by defense counsel therefor, to enter a mistrial. No reversible error was committed by the trial judge in connection with his handling of this matter.

POINT II:
A more difficult question is presented by appellant under this assignment. Written instructions were prepared by counsel for both sides and presented to the trial judge for granting or rejecting. Among those granted the State were S-4 (Appendix No. 1) and S-6 (Appendix No. 2).
Both the State and defense were granted instructions defining manslaughter and, on the evidence, there was a real factual question of whether the homicide was murder or manslaughter.
After the jury had retired and had begun its deliberations the following occurred:
BY THE COURT:
All right, the bailiff advised me that one member of the jury has stated to her that they might want to ask me a question; is that the purpose of the jury coming back in the Courtroom or has the jury reached a verdict?
BY JURY MEMBER:
No, sir, we want to ask a question.
BY THE COURT:
All right, sir, what is the question?
BY JURY MEMBER:
We need an interpretation of premeditation.
BY THE COURT:
All right, now, the only thing I can say to the jury is what is already covered in the instructions. Now, on the instructions, the word malice aforethought has been used. Is that the same definition that you need?
BY JURY MEMBER:
Possibly, we were considering premeditation-a length of time.
BY THE COURT:
Let me go to Jury Instruction S-4, which states: The Court instructs the jury that murder is the wilful, unlawful and felonious killing of a human being with malice aforethought without authority of law by any means or in any manner when done with deliberate design to effect death of the person killed and not in necessary self-defense. Now, that is the definition of murder, and I have looked at the instructions again and premeditation is not used in the instructions. So, the jury is instructed with the phrase malice aforethought.
BY JURY MEMBER:
Could you give us an interpretation of malice aforethought?
BY THE COURT:
In what regard, now?
BY JURY MEMBER:
Is it planned or is it just the thought?
BY THE COURT:
All right, let me say this. All I can say about malice aforethought is that there is no time limit as long as the malice aforethought existed before the incident occurred, and there is no definition of law of any length of time.
BY JURY MEMBER:
All right, I think that answers that.
BY THE COURT:
Does that answer your question?
BY JURY MEMBER:
Yes, sir.
BY THE COURT:
All right, if the jury will go and retire, and when you have reached a verdict, knock on this door and the bailiff will so advise me.
.....

*1004 THE FOLLOWING PROCEEDINGS WERE HAD OUT OF THE PRESENCE OF THE JURY:
BY MR. TURNAGE:
Comes now the defendant and moves the Court for a mistrial on the grounds of the jury has been orally instructed by the Court and further, that the province of the jury has been invaded by the comments made to the jury by the Court.
BY THE COURT:
All right, let the motion be and the same is hereby overruled.
It is argued on behalf of the State that the trial judge did not give a "full" definition of malice aforethought and, for that reason, did not offend against the ruling of this Court in Smith v. State, 237 Miss. 626, 114 So.2d 676 (1959). It is suggested by the State that the Court merely enlightened the jury as to whether malice aforethought had to be entertained for any length of time or not. The State asserts that the judge's instructions were in line with principles stated in Goldsby v. State, 226 Miss. 1, 78 So.2d 762 (1955) and Carter v. State, 199 Miss. 871, 25 So.2d 470 (1946). It is pointed out that no contemporaneous objection was interposed "while the court was instructing the jury." It is argued, therefore, that in the absence of a specific contemporaneous objection the action of the trial judge cannot be made the basis of error for the first time on appeal. Rayburn v. State, 312 So.2d 454 (Miss. 1975).
The case had been tried, submitted to the jury and the jury was engaged in its deliberations for the purposes of deciding the eventual outcome. To require intervention and objection by defense counsel during the colloquy between the jury and the trial judge, in which the jury was seeking information and the trial judge was giving it, would be unreasonable and prejudicial. A motion for a mistrial was made by defense counsel immediately upon the return of the jury to the jury room and was overruled by the trial court.
It is pointed out by appellant that the homicide in this case occurred as the result of a sudden quarrel between friends and neighbors and that the State, itself, requested and was granted several instructions informing the jury that it might convict appellant of manslaughter. Under the facts and circumstances and the instructions referred to, it is argued that the action of the trial court in entering upon the above discussion, and in defining malice aforethought or premeditation to the jury was extremely harmful and prejudicial and influenced the jury to convict of murder rather than manslaughter. Ordinarily, parties are afforded an opportunity to examine and object to instructions proposed to be given to the jury. Here, no reasonable opportunity was afforded the appellant to object until the jury retired. When that happened, the defense motion for a mistrial was entered immediately. We have concluded that substantial justice and traditional notions of fair play require that the case be reversed and remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.

APPENDIX 1:
The court instructs the jury that murder is the wilful, unlawful and felonious killing of a human being with malice aforethought, without authority of law, by any means or in any manner, when done with the deliberate design to effect the death of the person killed, and not in necessary self-defense.

APPENDIX 2:
The court charges the jury that murder is the felonious killing of a human being with malice aforethought, and with the premeditated design to take the life of the party killed: And that manslaughter is the felonious killing of a human being in the heat of passion and in sudden combat and without malice aforethought and without the deliberate design to take the life of the party killed.